## A. P. ANDERSON ET AL. v. H. K. ROWLAND.

### Decided March 9, 1898.

**1. Contract—Trusts—Restraint of Trade.**

A deed which binds the grantor not to run or permit to be run any saloon "in any building now owned by me in the same block * * * for a period of five years" is not void as being in violation of the "trust law" of the State (Rev. Stats., art. 5313), nor prohibited at common law as being an unlawful restraint of trade.

**2. Illegal Contract—Partial Restraint of Trade.**

While contracts in total restraint of trade are void, where the restraint is partial only—restrictive as to time and place—and is reasonable and based upon a consideration, it is valid and will be enforced.

**3. Partial Restraint of Trade—Covenant by Vendor—Enforced Against Vendee.**

A contract by which the vendor of a lot binds himself "not to run, or permit to

be run, any saloon * * * in any building now owned by me on the same block * * * whether I continue to own said property, or sell or convey the same to other parties, for a period of five years," though considered as a covenant merely personal, and not as running with the land, may be enforced against a subsequent purchaser of other lots in the block from the same grantor, and the purchaser restrained by injunction from conducting the business in question on such premises during the time limited.

#### 4. Same—Injunction—Damages.

Relief in equity by injunction does not, in this class of cases, depend upon the existence of substantial damages. Courts will protect the covenantee in the enjoyment of the right he has purchased.

#### 5. Same—Other Remedy.

The plaintiff in such case can not be remitted to his remedy by suit or claim for damages against his grantor, the damages being not susceptible of exact computation and the injury a recurring one.

#### 6. Warranty—Contract Construed.

An injunction against the use of a lot in a manner covenanted against was warranted as in accordance with the spirit and meaning of the covenant, though the contract in terms covenanted only against a use of any building upon such lot then owned by the warrantor.

APPEAL from McLennan. Tried below before Hon. MARSHALL SURRATT.

*Wm. W. Evans,* for appellant.

*Herring & Kelley,* for appellee.

FISHER, CHIEF JUSTICE.—On the 17th day of December, 1896, J. E. Smith sold and conveyed to H. K. Rowland a certain lot in the city of Waco, and in the deed conveying said lot, Smith uses the following language, to wit: "As a further consideration for this purchase and sale, I, the said J. E. Smith, obligate myself not to run or permit to be run any saloon or place for the sale of malt or intoxicating liquors *in any building now owned by me in the same block in which the above described property is situated, whether I continue to own said property or sell or convey the same to other parties, for a period of five years.*" After selling and conveying the above property to H. K. Rowland, Smith sold and conveyed unto S. E. Clauss another storehouse owned by him in the same block in the city of Waco. The respective positions of the property sold to H. K. Rowland and that sold to S. E. Clauss, are shown on a map on page 19 of the record, the one sold to Rowland being marked and designated as "Rowland's Saloon," and the one sold Clauss marked and designated "Anderson's Saloon;" all the property situated on a public street, near the depot of the Missouri, Kansas & Texas Railway Company. The evidence showed that H. L. Luedde, who was acting as agent for defendant S. E. Clauss, knew that J. E. Smith had previously conveyed the storehouse in the same block to H. K. Rowland, and knew of the condition, above recited, in the deed from Smith to Rowland. J. E. Smith conveyed the property in question on the 5th day of March, 1897, to

S. E. Clauss. S. E. Clauss rented the property to Mr. Anderson, who opened up a saloon in the property rented by him, which was in the same block as that sold by Smith to Rowland."

At the time the conveyance was made by Smith to Rowland, and at the time Anderson opened up the saloon in the same block, Rowland was conducting and carrying on a saloon business in the property purchased by him, and before Anderson opened up his saloon he was notified by Rowland not to do so, and of Rowland's right, by virtue of the stipulation contained in the deed from Smith to him. In 1895, after Anderson had opened up his saloon business, plaintiff brought this suit to enjoin him from the pursuit of that business and from violating the covenant contained in the deed prohibiting the sale of liquors in other buildings in the same block that were owned by Smith at the time that the deed to Rowland was executed. The court below perpetuated the injunction, and from that judgment this appeal is taken.

The above are all the facts that are necessary to be stated and found by us.

It is contended by appellants that the restrictive clause in the deed from Smith to Rowland, as to the use of the property, is void, because it is contrary to the trust laws of this State, and is also contrary to public policy, and void at common law. In a case where one merchant sold his business to another, and as a part of the consideration agreed to refrain from engaging in the mercantile business in the town where they were located for one year, the Supreme Court held that the agreement was valid and not prohibited by the anti-trust statutes of this State. Gates v. Hooper, 39 S. W. Rep., 1080. There is no substantial difference between the contract there construed and the restrictive clause in the deed in question.

Contracts in total restraint of trade are void, but where the restraint is partial and restrictive as to time and place, and reasonable, and based upon a consideration, it is valid and will be enforced. 3 Am. and Eng. Enc. of Law, 882; Imp. Co. v. Dawson, 24 S. W. Rep., 576; Jeffery v. Graham, 61 Texas, 481.

Restraints upon trade, although limited as to time and place, may be of such magnitude as to injuriously affect the interests of the public, and for this reason be contrary to public policy. Oil Co. v. Adoue, 83 Texas, 650. But the restrictive covenant contained in the deed before us does not relate to a transaction which affects the public interests, but it simply concerns the private business of the parties, in limiting the use of the property for a definite time. It is a reasonable measure, agreed upon for the protection of one of the parties to the contract, relating to a matter of private concern between them which the public are not interested in, based upon a consideration advanced to the other. Mfg. Co. v. Garst, 49 Am. St. Rep., 784, and notes; Angier v. Webber, 92 Am. Dec., 749, and notes; Hodge v. Sloan, 17 N. E. Rep., 336. In our opinion, the covenant in the deed is legal.

It is next contended that the covenant in question contained in the

deed to plaintiff is personal, and does not run with the land owned by Smith, for which reason it would not affect his subsequent vendees.

It is unnecessary for us to decide whether the covenant is real or personal, for if we should hold it to be of the latter class, the plaintiff, under the facts of this case, could nevertheless maintain his action. It is clear from the facts that the appellant, Anderson, before he opened the saloon and engaged in that business in lot 816, and Luedde, the agent of Clauss, in purchasing this lot from Smith, knew of the restrictive clause in the deed from Smith to appellee Rowland, and that its observance would be insisted upon. Purchasing the property and entering upon it, engaging in the business prohibited with notice of the restrictive condition in the deed to plaintiff, puts appellants in the same attitude as that occupied by Smith. If Smith had violated in person the agreement the action of plaintiff would lie against him. The appellants, with notice of the plaintiffs' rights, could occupy no better position. They, under the circumstances, would have no better right than Smith.

In a case where a covenant restricting the use of the land was violated, the Court of Appeals of New York said:

"But the question presented is, upon the conceded facts, really one of individual right, with which the question of public policy has little, if anything, to do. Parties competent to contract, have contracted, the one to sell a portion of his land, but only upon such conditions as will protect himself in the prosecution of business carried on upon the residue, the other agreeing to buy for a consideration affected by that condition, and enabled to do so only by acceding to it; and he, therefore, binds himself by contract to limit the use of the land purchased in a particular manner. There seems no reason why he and his grantee taking title with notice of the restriction should not be equally bound. The contract was good between the original parties, and it should, in equity at least, bind whoever takes title with notice of such covenant. By reason of it the vendor received less for his land; and the plain and expressed intention of the parties would be defeated, if the covenant could not be enforced as well against a purchaser with notice as against the original covenantor. In order to uphold the liability of the successor in title, it is not necessary that the covenant should be one technically attaching to and concerning the land and so running with the title. It is enough that a purchaser has notice of it; the question in equity being, as is said in Tulk v. Moxhay, 11 Beaver, 571, 2 Phillips Chancery, 774, not whether the covenant ran with the land, but whether a party shall be permitted to use the land inconsistently with the contract entered into by his vendor, and with notice of which he purchased. This principle was applied in Tallmadge v. Bank, 26 New York, 105, where the equity in regard to the manner of improvement and occupation of certain land grew out of a parol contract made by the owner with the purchaser, and was held binding upon a subsequent purchaser with notice, although his legal title was absolute and unrestricted. In Trustees v. Lynch, 70 New York, 440, the action was brought to restrain the carrying on of business on certain

premises in the city of New York, of which the defendant was owner, upon the ground that the premises were subject to a covenant reserving the property exclusively for dwelling houses. The court below held, among other things, that the covenant did not run with the land, and that the restriction against carrying on any business on the premises was liable to conflict with the public welfare, and judgment was given for the defendant. Upon appeal it was reversed—the covenant held to be binding upon a subsequent grantee with notice, as well as upon the original covenantor. So the restraint may be against the use of the premises for one or another particular purpose, as that no building thereon "shall be used for the sale of ale, beer, spirits," etc., "or as an inn, public house, or beer house" (Carter v. Williams, L. R. 9 Eq., 678); and it is said, a man may covenant not to erect a mill on his own lands. Mitchell v. Reynolds, supra. Many other instances of restraint might be referred to; and where it is of such nature as concerns the mode of occupying or dealing with the property purchased in the way of business operations, or even the omission of all business, or certain kinds of business, or the erection or nonerection of buildings upon the property, we see no reason to doubt the validity of an agreement, fair and valid in other respects, which secures that restraint. Indeed, it seems well settled by authority that a personal obligation so insisted upon by a grantor and assumed by a grantee, which is a restriction as to the use of the land, may be enforced in equity against the grantee and subsequent purchasers with notice. Parker v. Nightingale, 6 Allen, 341, 344; Burbank v. Pillsbury, 48 N. H., 475. Nor is it essential that the assignees of the covenantor should be named or referred to. Morland v. Cook, L. R. 6 Eq., 252. In Tulk v. Moxhay, 1 Hall & Tw., 105, it was said that the jurisdiction of the court in such cases is not fettered by the question whether the covenant does or does not run with the land." Hodge v. Sloan, 17 N. E. Rep., 337.

Upon this subject, the court in Kirkpatrick v. Peshine, 24 New Jersey Equity, 213, said:

"The existence of the covenant was known to the defendants when Mrs. Peshine took her deed, and she took her conveyance subject to the restriction and obligation imposed by it. The statements in the bill on the subject of notice to the defendants are not denied or disputed by the answer.

"The agreement between Messrs. Mackin, McClane, and Keasby with the complainant is one to which equity will give effect, as against a subsequent grantee with notice. It is one of that class of cases in which equity will charge the conscience of a grantee of land with an agreement relating to the land, although the agreement neither creates an easement nor runs with the land. The jurisdiction of courts of equity over contracts and covenants is not confined to cases where an action at law can be maintained, but extends to cases where an action at law is not maintainable. Covenants controlling the enjoyment of land, though not binding at law, will be enforced in equity, provided the person into whose hands

the land passes has taken it with notice of the covenants. Kerr on Injunc., 530; Sugd. on Vend., 596. 'The question,' said Lord Cottenham, in Tulk v. Moxhay, 2 Ph., 774, 'is not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased.'

" 'Reason and justice,' said Lord Justice Knight Bruce, in DeMattos v. Gibson, 4 DeG & J., 282, 'seem to prescribe, that at least as a general rule, where a man by gift or purchase acquires property from another, with knowledge of a previous contract, lawfully and for a valuable consideration made by him with a third person, to use and employ the property for a particular purpose, in a specified manner, the acquirer shall not, to the material damage of the third person, in opposition to the contract and inconsistently with it, use the property in a manner not allowable to the giver or seller.' See also Dietrichsen v. Cabburn, 2 Ph., 52; Child v. Douglas, 1 Kay, 560; Gibert v. Peteler, 38 Barb., 488, 514; Parker v. Nightingale, 6 Allen, 341; Tallmadge v. Bank, N. Y., 105; Hills v. Miller, 3 Paige, 254; Barrow v. Richard, 8 Paige, 351; Seymour v. McDonald, 4 Sandf. Ch., 502; Brewer v. Marshall, 4 C. E. Green, 537."

Judge Bigelow in Whitney v. Railway, 11 Gray, 359 (same case, 71 American Decisions, 717), states the principle in this language:

"The more difficult question, and the one on which the decision of this case must turn, is, to what extent and in what cases are such stipulations binding on those who take the estate under the grantee, directly or by a derivative title? Upon this point the better opinion would seem to be that such agreements are valid and capable of being enforced in equity against all those who take the estate with notice of them, although they may not be, strictly speaking, real covenants, so as to run with the land, or of a nature to create a technical qualification of the title conveyed by the deed. This opinion rests on the principle that, as in equity that which is agreed to be done shall be considered as performed, a purchaser of land with notice of a right or interest in it subsisting in another, is liable to the same extent and in the same manner as the person from which he made the purchase, and is bound to do that which his vendor had agreed to perform. Therefore, an agreement or covenant, though merely personal in its nature, and not purporting to bind assignees, will, nevertheless, be enforced against them, unless they have a higher and better equity, as bona fide purchasers without notice. It is on this ground that a purchaser of an estate, taking it with notice of a prior agreement by the vendor to sell it to another, can be compelled in equity to convey it according to such agreement. In like manner, by taking an estate from a grantor with notice of valid agreements made by him with the former owner of the property concerning the mode of occupation and use of the estate granted, the purchaser is bound in equity to fulfill such agreements with the original owner, because it would be unconscientious and inequitable for him to set aside and disregard the

legal and valid acts and agreements of his vendor in regard to the estate, of which he had notice when he became its purchaser. In this view, the precise form or nature of the covenant or agreement is quite immaterial. It is not essential that it should run with the land. A personal covenant or agreement will be held valid and binding in equity on a purchaser taking the estate with notice. It is not binding on him merely because he stands as an assignee of the party who made the agreement, but because he has taken the estate with notice of a valid agreement concerning it, which he can not equitably refuse to perform: Sugd. on Vend., 11 ed., 734-743; Bedford v. British Museum, 2 Myl. & K., 552; Bristow v. Wood, 1 Coll., 480; Whatman v. Gibson, 9 Sim., 196; Schreiber v. Creed., 10 Id., 9; Barrow v. Richard, 8 Paige, 356, 360."

To the same effect are Trustees v. Lynch, 26 Am. Rep., 615; Willoughby v. Lawrence, 4 N. E. Rep., 356; Parker v. Nightingale, 83 Am. Dec., 632.

The appellant's fourth assignment of error is as follows: "The court erred in overruling defendant's demurrer number 4, to the effect that said petition fails to show that plaintiff had no adequate remedy at law, and does not show that plaintiff was entitled to any damages, for which he has no remedy at law."

The meaning of this assignment is a little confusing. But we will consider it with the twelfth and thirteenth assignments, which are as follows:

"12. The court erred in rendering judgment for plaintiff and enjoining defendants, because if plaintiff has any cause of action whatever, it is against said Smith for failure of consideration, and he has a full, complete, and adequate remedy at law and in equity therefor, for the evidence shows that he owes a note for $1000 of the purchase money of the land bought by him, and that Isaac Simmons, the holder of said note, bought the same with full notice, and part of said note is past due, and all of it unpaid."

"13. The court erred in rendering judgment against and enjoining defendants, because the evidence shows conclusively that defendant Anderson is amply solvent and able to respond in damages, and plaintiff does not even allege otherwise; and the evidence in no way shows that defendant Luedde is not able to respond in damages."

If it is meant by the fourth assignment, which is not accompanied with propositions, that it is not shown that the plaintiff has sustained any damages, therefore no remedy will lie to restrain a violation of the agreement, it may be said that the petition does in effect allege that damages will result to the plaintiff if Anderson is permitted to use the property for saloon purposes; and that it would be ruinous to his business to permit such close competition. Rowland testified, that "Mr. Anderson started his saloon on April 7th. My business has gone down every day since then." But an answer to all of this is, that relief in equity by injunction does not in this class of cases depend upon the existence of sub-

stantial damages. In Kirkpatrick v. Peshine, 24 New Jersey Equity, 216, it is said:

"It is further insisted by the defendants, that the inconvenience to the complainant, if the structure complained of in the bill be permitted, will be but slight, and that therefore this court ought not to interfere by its injunction to restrain the defendants in the premises.

"The rule on this head is correctly stated in Kerr on Injunctions, 532: 'There may be cases in which the damage to arise from the breach of the covenant would be inappreciable, and in which the court would refuse to interfere. But the case must be free from all possibility of doubt. It must be clear that there is no appreciable, or at all events no substantial damage, before the court will, upon the ground of smallness of damage, withhold its hand from enforcing the execution. The mere fact that a breach of the covenant is intended is a sufficient ground for the interference of the court by injunction. A covenantee has the right to have the actual enjoyment of the property modo et forma, as stipulated for by him. It is no answer to say that the act complained of will inflict no injury on him, or will be even beneficial to him. It is for the plaintiff to judge whether the agreement shall be kept, as far as he is concerned, or whether he will permit it to be violated. It is not necessary that he should show that any damage has been done. It being established that the acts of the defendant are a violation of the contract, the court will protect the complainant in the enjoyment of the right he has purchased." 2 High on Injunc., sec. 1158.

In reference to the questions raised in the other two assignments quoted, it is sufficient to refer to the opinion in Angier v. Webber, 14 Allen, 211 (same case, 92 American Decisions, 749), a case similar to this, where it is said: "For this violation of this covenant, the plaintiff is entitled to relief in equity. An action at law will furnish no adequate remedy. The damages are in their nature such as not to be susceptible of proof or exact computation; and the injury caused by the acts of the defendants is a constantly recurring one, for which multiplied suits at law would afford but an imperfect remedy. 2 Story Eq., sec. 925; 2 Dan. Ch. Prac., 1760; Williams v. Williams, 2 Swanst., 253." To same effect, 2 High on Injunc., 3 ed., secs. 1142-1158.

There is no merit in the eighth and fourteenth assignments of error. The judgment rendered by the court was in accord with the covenant contained in the deed asserted by the plaintiff. It restrained the defendants from using for the prohibited purpose, buildings and grounds which were owned by Smith, when he sold to appellee, situated in the same block as this property. This was in keeping with the spirit and meaning of the covenant contained in the deed executed by Smith.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*