## PLASTER v. STUTZMAN.    (No. 9198.)

Court of Civil Appeals of Texas. Galveston. June 21, 1928.

Rehearing Denied July 12, 1928.

1. Evidence ⬤➡155(1)—Testimony by officer of company establishing restricted subdivision, that he did not object to temporary violation of restriction but had no authority to waive same, held properly admitted, where appellant introduced similar evidence by same witness.

In suit to restrain violation of building restriction, testimony by officer of company establishing general restricted district, that he had no personal objections to defendant's temporary use of garage for residence in violation of restriction but had no authority to waive restriction, was properly admitted where writings and deeds which alone contained restrictions were introduced in evidence without objection, and examination of officer by defendant showed restrictions were adopted for benefit of all purchasers.

2. Injunction ⬤➡128—Evidence supported finding that restrictions in subdivision were adopted for benefit of all purchasers as well as company establishing subdivision.

In suit to restrain violation of restrictions in subdivision, evidence by officers of company establishing subdivision and of writings and deeds showing restrictions, was sufficient to support finding that restrictions were adopted for benefit of all purchasers as well as for company.

3. Easements ⬤➡21—Purchaser of realty, knowing it is burdened with easement for other property, takes subject thereto.

One who purchases real estate with knowledge that it is burdened with easement in favor of other property takes subject thereto.

4. Injunction ⬤➡107—Owner of any lot in tract for benefit of which restriction was imposed may obtain relief against violation of restriction.

In case of violation of building restriction, relief may be sought by owner of any lot in tract for benefit of which restriction was imposed.

5. Appeal and error ⬤➡742(1)—Assignments of error on which there are no propositions in brief are not entitled to consideration.

Assignments of error appearing only in group of assignments at back of appellant's brief, without any proposition in brief germane to all or any of assignments, are not entitled to consideration.

6. Covenants ⬤➡72—Plaintiff building fence higher than permited by deed, but subsequently making fence conform to restrictions, held not estopped from enjoining breach of restriction against using garage for residence.

In suit by owner of lot in subdivision subject to general plan of restrictions to restrain violation by another owner, of restriction requiring residences to cost not less than $2,500 and prohibiting use of garage as residence, plaintiff was not estopped from maintaining injunction on ground that he had violated some restrictions contained in deeds, where only evidence tending to show violation was that plaintiff had built fence 5 feet high, in violation of restrictions limiting fences to 3 feet, but subsequently made fence to conform to restrictions.

7. Covenants ⬤➡72—Unsubstantial violations hold not to prevent lot owner from enjoining substantial violations of covenant.

Unsubstantial violations of building restrictions held not to prevent lot owner from maintaining action for injunction to prevent substantial violations of covenant.

8. Injunction ⬤➡109—That defendant was occupying garage as residence in violation of building restriction only pending construction of permanent residence held no defense to injunction against violation.

In suit by lot owner in subdivision to enjoin another lot owner from using garage as residence in violation of building restriction, contention by defendant that he intended to construct residence conforming to restrictions, and that he occupied garage only pending construction of permanent residence, and that another party had been permitted to do likewise, held no defense to injunction.

9. Covenants ⬤➡72—Abandonment of general plan of restrictions in subdivision requires proof that general scheme has been violated to extent reasonably leading to conclusion of abandonment.

To justify finding that general scheme for restricting subdivision has been abandoned, it must be shown that general scheme has been violated to such an extent as to reasonably lead to conclusion that it had in fact been abandoned.

10. Covenants ⬤➡72—General restrictive scheme in subdivision held not shown to be abandoned by two violations objected to by lot owner.

In suit to restrain violations of building restriction in subdivision, evidence of two violations of restrictions to which plaintiff objected to promoters of subdivision held not to show abandonment of general restrictive scheme.

11. Injunction ⬤➡62(3)—Injunction against continuation of breach of covenants establishing building restrictions held proper under undisputed evidence showing breach of covenants.

Where undisputed evidence showed that defendant breached covenant in deed restricting

subdivision, court was justified in restraining by injunction continuation of such breach.

## On Motion for Rehearing.

12. Appeal and error ⊛⟹1050(1)—Defendant, not objecting to testimony showing restrictions were intended for benefit of all purchasers, cannot complain of admission of similar testimony on cross-examination of same witness.

In suit to restrain breach of building restrictions in subdivision, defendant, not objecting to introduction of testimony by president of company establishing subdivision tending to show that officer informed defendant that all purchasers of parts of subdivision had interest in restrictions, cannot complain of testimony by officer on cross-examination that restrictions were for benefit of all purchasers.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Suit by W. S. Stutzman against W. A. Plaster and others. Judgment for plaintiff, and defendant named appeals. Affirmed.

J. S. Bracewell, of Houston, for appellant. Leon L. Mott, of Houston, for appellee.

LANE, J. This suit was brought by appellee, Stutzman, against appellant, Plaster, O. O. Ballard, and Park Terrace Company, a corporation, to restrain them and each of them from making use of a certain garage erected by appellant, Plaster, on lot 1 in block 5, of a subdivision in the city of Houston known as Park Terrace, situated near to the residence property of appellee.

The plaintiff alleged, substantially, that the property in the subdivision was duly platted by its owners, Park Terrace Company, and the lots therein sold under a general plan of restrictions, requiring all residences erected therein to cost not less than $2,500, and prohibiting the use of any building erected therein constructed for a barn, garage, or for any purpose other than for a residence, from being used as a residence; that such restrictions were put in force by Park Terrace Company for the purpose of enhancing the value of lots in the subdivision for the benefit of the company and for all those who might purchase a lot therein; that such restrictions were written into the deeds of every person who purchased a lot in said subdivision; that the lots in the subdivision were advertised for sale and sold under said general plan of restrictions.

He alleged that appellant, Plaster, had breached said restrictions and was residing in a garage constructed by him at a cost of less than $1,000 on lot 1 in block 5 of the subdivision, to which he has attached sleeping quarters for use by himself and family, over the protest of the plaintiff.

Appellant, Plaster, answered by general demurrer and special exceptions as follows:

"That the petition did not allege that the building restrictions had been complied with by other grantees in said subdivision; that plaintiff did not allege that he himself had complied with such building restrictions; that said petition showed upon its face that defendant was occupying said property merely as a temporary residence and that the injuries alleged in the petition were vague and indefinite. Answering further, by general denial and for special answer, alleged that he was holding such property under a contract with defendant O. O. Ballard; that he had entered upon the property and erected a garage and was using the same as a temporary residence until he could build a residence in substantial compliance with the building restrictions, all of which was agreed to and acquiesced in by defendant Ballard; that such garage in the manner of its use did not, in any manner, injure plaintiff's property; and, further, that it was a custom in said subdivision for purchasers to erect a garage first and use the same as a temporary dwelling while the main dwelling was being erected; that there was another temporary residence in said subdivision in similar condition to that of defendant, and plaintiff had not complained of said residence; that plaintiff himself had violated the covenants contained in the restrictions of said subdivision in the manner of erecting his fences; that there were many restrictions contained in the contracts and deeds under which said property was sold, and few of said restrictions had been complied with; that plaintiff had never complained of any other violation of restrictions, and was estopped to rely thereon."

## Facts.

The Park Terrace Company, a corporation, owned a small tract of land in 1923 near the city of Houston. This company, in a general plan or scheme of development, subdivided said land into lots, blocks, and streets as a residential district. It prepared and distributed quantities of advertising matter, in which it was stated that in Park Terrace every convenience had been added—lights, water, sewerage, paved streets and walks, and restrictions applying to all tracts. Under the plan and scheme, lots were sold to several parties, among whom was appellee, Stutzman. All deeds by which the lots were sold contained, among other provisions, the following:

"No building to be used as a dwelling shall ever be erected or placed on said premises, the original cost of which shall be less than $2,-500.00, said amount to include cost of residence proper only, and not include outhouses, walks, fences, or other improvements, and no building constructed for purposes other than a residence shall be used or occupied as a residence."

"The above restrictions shall be in force for a period of 19 years from August 1, 1923, and any and all of said restrictions may be extended as to any part of or all of said subdivision for an additional period not to exceed 25 years, provided the owners of a majority of the lots in Park Terrace, who are actual bona fide residents thereof, shall, prior to January

1, 1940, execute and acknowledge an agreement making an extension of said period of 19 years and file the same of record at the office in Harris county, Texas, where conveyances of real estate may be required to be filed, and said latter agreement may provide for subsequent extensions, none of which shall exceed 25 years."

"These restrictions shall be covenants running with the soil, and will be a limitation and condition of the deed when issued."

Appellee, Stutzman, purchased from the Park Terrace Company lot 7 in block 2 of the subdivision in 1924, and erected thereon his residence at a cost of $4,500. After Stutzman built his dwelling house, appellant, Plaster, in March, 1927, having an oral contract with O. O. Ballard, the president of Park Terrace Company, for the purchase of lot 1 in block 5 of the subdivision, began the construction of a building on the rear part of said lot as a garage to cost about $300.

On March 28, 1927, Ballard entered into a written contract with appellant to sell him the lot above mentioned. After the completion of the garage building, appellant, Plaster, with his family, occupied it as a residence about the 3d day of April, 1927, and has continued to do so since, but intended to so occupy it only until he was able to build a residence.

Appellant testified that his written contract put him on notice as to the restrictions hereinbefore mentioned; that notwithstanding such notice he went ahead and built that garage and moved into it with his family, because he was not able to build a residence to cost $2,500, and would not be able to do so for at least 18 months. He admitted that he was living in the garage in violation of the restrictions, but stated that one or two other persons were, and had for some 2 years been violating the restrictions; that appellee, Stutzman, had violated them by building a fence, forbidden by the restrictions, and permitted it to remain until after he (appellant) had filed his answer on this suit.

O. O. Ballard, president, and Earl Bradley, secretary, of Park Terrace Company, testified that from the beginning it was the intention of the promoters of Park Terrace to subdivide the property as a residential district and have restrictions covering all of the lots in the subdivision, and to have all the restrictions incorporated in all the deeds; that the restrictions were adopted when the property was first put on the market, and were meant to apply to the whole property for the benefit of all purchasers as well as the company.

The case was tried before the court without a jury, and, at the conclusion of the evidence, judgment was rendered perpetually enjoining the defendants as prayed for by the plaintiff, to be effective on and from the 29th day of March, 1928. Defendant Plaster has appealed.

By his first and second assignments, appellant substantially insists that the court erred in permitting O. O. Ballard, president of the Park Terrace Company, and Earl Bradley, its secretary, to testify, over his objection, that the restrictions adopted by said company, and which were written into the deed of appellee, were intended for the benefit of all the purchasers of lots in the subdivision as well as for the benefit of the company; and by his sixth and seventh assignments he insists that the evidence properly admitted was wholly insufficient to show that the restrictions adopted were imposed and intended for the benefit of purchasers of lots in the subdivision as well as for the benefit of the grantor, and therefore the court erred in rendering judgment for appellee.

Appellant, Plaster, testifying in his own behalf, stated substantially that he had a written contract dated March 28, 1927, for the purchase of his lot; that the contract was made between himself and Mr. Ballard, president of Park Terrace Company; that the contract put him on notice of the restrictions adopted by the company applicable to all lots in the subdivision; that he built his garage knowing of the restrictions; that he talked to President Ballard about building his garage before he built it, and he agreed to let him build it for a temporary residence; that he got permission from the owners of lots on each side of his lot; that they had no objection, and he did not see why appellee should object.

O. O. Ballard, president of the company who sold the lot to appellant, called as a witness by appellant, testified on direct examination that he explained the restrictions to appellant, and read to him the contract containing such restrictions, and told him that, if the neighbors did not object to his temporarily occupying the garage as a residence, he (Ballard) would not object, but that he had no authority to waive the restrictions for the company; that, if no one else objected, he had no personal objection.

The objection urged to the testimony was that it was not the best evidence of the intention of the promoters of the subdivision, that the deeds to the several purchasers, the plat of the subdivision, and minutes of the company would be the best evidence as to all such matters, and because the testimony tended to establish an easement or servitude against the property by parol testimony.

[1] We think the testimony objected to was properly admitted. It was not shown that there was any writing in existence, other than the advertising matter and the deeds containing the recital of the restrictions, which would tend to show the intention of the promoters of the subdivision in adopting such restrictions, and those writings were both introduced in evidence without objection, and besides, as shown above, appellant called

Ballard as a witness, and, in answer to questions propounded by appellant's counsel on direct examination, the witness testified to facts clearly showing that the restrictions were adopted for the benefit of all purchasers, and that, before any one could breach them, they should get the consent of such purchasers. Under such circumstances, the court committed no reversible error, if error at all, in admitting the testimony objected to.

[2, 3] We think the evidence was amply sufficient to support a finding by the trial court that the restrictions were adopted for the benefit of all purchasers as well as for the company. The advertising matter and the restrictions of which appellant was advised and which were recited in his contract of purchase clearly indicated such adoption.

"One who purchases real estate with knowledge that it is burdened with an easement in favor of other property takes subject thereto." 9 R. C. L., page 805, section 61.

In 18 Corpus Juris, p. 394, § 459, it is said:

"Where the owner of a tract of land subdivides it and sells distinct parcels thereof to separate grantees, imposing restrictions upon its use pursuant to a general plan of development or improvement, such restrictions may be enforced by any grantee against any other grantee, either upon the theory that there is a mutuality of covenant and consideration, or upon the ground that mutual negative equitable easements are created. Where parcels are sold with reference to such a uniform plan to persons having notice thereof, the grantees may enforce the restrictions."

See note in volume 37, L. R. A. (N. S.) page 29 et seq., where it is said:

"In considering the effect of the existence of a building plan or general scheme of development upon the rights of the parties, it must be borne in mind that the problem presented is: What was the intention of the parties? This is ascertained by the evidence presented. The plan or scheme furnishes evidence of this intention. As was said by Collins, L. J., in an English case: 'Where a vendor sells land and retains other land, and imposes on the purchaser a covenant, it becomes a question of fact what the effect of that covenant is. That being a question of fact, it must be decided in the light of evidence, as are all other questions of fact. But if you find that a building scheme exists, proof of that building scheme may be given. It is only a matter of evidence, and it is perfectly competent to prove by other evidence, if you can find it, whether or not the building scheme applies. So, it has been held that it is not necessary that there should have been a general plan in order to make such agreements enforceable between subsequent grantees. The court said that it is not because a plan is deranged that the court interferes, but because rights are invaded, or about to be; and this fact may exist in the plan of two lots as well as in one of two hundred. The plan often furnishes the proof of the terms on which the sales were made; but the fact of the alleged terms is as effective when proved by a single deed, as when proved by a plan.

"The plan furnishes a very strong inference that it was the intention to make the restrictions specified mutually binding on each purchaser of a lot in the plot included therein, but it is not necessarily conclusive. If, from all the evidence—the map, the advertisements, the covenants in the deeds themselves—the uniform scheme of development or improvement is proved to have been the intention of the parties, equity will carry it out at the suit of any of the lot holders."

In Wilson Company v. Gordon, 224 S. W. 703, Justice Graves, speaking for this court, said:

"Under the doctrine applied in these authorities the covenant here, then, being valid and enforceable against both appellants, and Siadous having been found to have prior knowledge of the restrictions constituting its basis and sole subject-matter, proof of it by showing the representations which made plain the nature of the compact as well as the acts and intent of its makers was likewise clearly admissible against both complainants."

[4] "In case of the violation of a building restriction, relief may be sought by the owner of any lot in the tract for the benefit of which the restriction was imposed." 7 R. C. L. p. 1114.

In 7 R. C. L. p. 1125, it is said:

"There is a growing tendency to incorporate equitable doctrines with common-law rules, and, in equity, covenants relating to land, or its mode of use or enjoyment, are frequently enforced against subsequent grantees with notice, whether named in the instrument or not, and though there is no privity of estate. Furthermore, it is immaterial in such cases whether the covenant runs with the land or not; the general rule being that it will be enforced according to the intention of the parties. It is only necessary that the covenant concerns the land or its use, not merely in a collateral way, and that the subsequent grantee has notice of it either actual or constructive. Covenants are so enforced on the principle of preventing a party having knowledge of the just rights of another from defeating such rights. Although some of the authorities are to the effect that such a covenant creates what is termed an equitable easement of servitude passing with a conveyance of the premises and enforceable against subsequent grantees with notice, or equitable restrictions, enforceable as such, there is a class of cases in which equity will grant relief against an alienee of lands, even though the agreement neither creates an easement nor runs with the title."

See, also, Austin v. Richardson (Tex. Civ. App.) 278 S. W. 513; Anderson v. Rowland, 18 Tex. Civ. App. 460, 44 S. W. 911; 32 Corpus Juris, 206, § 320; Lawson v. Port Arthur Canal & Dock Co. (Tex. Civ. App.) 185 S. W. 600; Hooper v. Lottman (Tex. Civ. App.) 171 S. W. 270.

In Green v. Gerner, 289 S. W. 999, in an opinion by the Commission of Appeals affirm-

ing the opinion of this court reported in 283 S. W. 615, it was held that covenants in a deed restricting the use of lots to residence purposes did not give purchasers of other lots in the restricted district the right to object to alleged violation, where the restrictive agreement contained in the deeds from the common grantor did not purport to extend to various grantees but apparently retained liberty on the part of the grantor to forego and waive the restrictions; that in such case the grantor only, or those having his rights, might enforce the restrictive covenants in the deed which did not purport to run in favor of other grantees of parts of the restricted property, but that owners of lots in subdivisions, such as the one under consideration in the present case, may have a right to enjoin violations of restrictive covenants in deeds from the common grantor, where the covenants are part of the general scheme or plan as to the buildings to be erected. When we look to the restrictions incorporated in the deeds in the present case, and the contract for purchase of appellant, the advertising matter circulated, and the testimony of Ballard, Bradley, and appellant himself, it is apparent that there existed a general scheme or plan in which all purchasers of parts of the subdivision shared and that the restrictions recited in the deed extended to such purchasers.

It is clear from what we have said that we think we would not be justified in reversing the judgment on a theory that the testimony objected to was erroneously admitted, or upon a finding that there was no evidence to support it.

By his third, fourth, and fifth assignments, appellant insists that the court erred in overruling his demurrer to the plaintiff's petition, because it was not alleged therein that the scheme of development of the land had been put in force, or that it had been complied with by all the grantees of parts thereof, or that the plaintiff himself had complied with the same.

[5] Assignments 3, 4, and 5 are shown only in a group of assignments at the back of appellant's brief, and there is no proposition in his brief germane to all or any one of them, and they are therefore not entitled to consideration.

[6] By appellant's second proposition germane to assignment 10, it is insisted that:

"The court erred in rendering judgment for plaintiff because the undisputed evidence showed that plaintiff himself had violated some of the restrictions contained in said deeds of conveyance and that the general scheme of development of said property, if any, had been abandoned."

We overrule the contention. The only evidence tending to show that the plaintiff had violated any of the restrictions was to the effect that he had built a fence 5 feet high on his lot to prevent his chickens from going upon the properties of his neighbors, while the restrictions provided that no fence should be erected to a height of more than 3 feet. The evidence shows that, when complaint was made of the height of the fence, plaintiff made it conform to the restrictions. There was no evidence showing that the general scheme of development had been abandoned.

[7] Unsubstantial violations, such as the building of the fence by the plaintiff, would not prevent him from maintaining an action for an injunction to prevent substantial violations of the covenant. 32 Corpus Juris, p. 209; McGuire v. Caskey, 62 Ohio St. 419, 57 N. E. 53; Johnson v. Robertson, 156 Iowa, 64, 135 N. W. 585; Hyman v. Tash (N. J. Ch.) 71 A. 742; Adams v. Howell, 58 Misc. Rep. 435, 108 N. Y. S. 945; Stewart v. Finkelstone, 206 Mass. 28, 92 N. E. 37, 28 L. R. A. (N. S.) 634, 138 Am. St. Rep. 370.

It is said in 18 Corpus Juris, p. 403, col. 2:

"But where violations have not been permitted to such an extent as to evidence an abandonment of the plan, a grantee will not be prevented from objecting to further violations by the fact that he had not objected to previous violations by others, particularly where such violations did not immediately affect the enjoyment of his own premises, or where they were trivial in character as compared with those complained of. Further, slight and unimportant infractions of the restriction by a grantee will not prevent him from complaining of material and substantial encroachments by another."

Again in 32 Corpus Juris, p. 209, it is said:

"The fact that complainant has violated a building restriction in the same manner as defendant will not bar him from invoking the jurisdiction of equity to restrain defendant from a further and different encroachment to his injury. Unsubstantial violations by complainant of the covenant will not prevent him from maintaining an action for an injunction to prevent substantial violations thereof."

Applying the law announced by the authorities cited, we cannot hold that appellant in the present case is estopped from maintaining his action for the injunction prayed for, nor can we hold that the trial court erred under the evidence in not rendering judgment for the defendant upon the theory that the undisputed evidence showed an abandonment of the general scheme of development of the subdivision.

[8] By his third proposition, appellant insists that the undisputed evidence showing that he had, in conformity to the restrictions, constructed his garage, and that he intended to construct his residence in conformity with the restrictions, and that he occupied his garage as a place of residence only pending the construction of his permanent residence, and it being also shown that another party had been permitted to occupy a temporary

residence on the subdivision, it was error for the court to enjoin him from the use he was making of his garage.

[9, 10] We regret that we must overrule the contention last made. It seems to be settled that to justify a finding that the general scheme and plan, in cases such as the one under consideration, have been abandoned, it must be shown that such general scheme has been violated to such an extent as to reasonably lead to the conclusion that such had in fact been abandoned. The trial court, no doubt, found from the evidence that no such showing had been made. The evidence shows that Park Terrace subdivision consisted of some sixty lots or blocks, ranging in size from a third of an acre to two acres, and only two violations of the restrictions were shown, besides the one which is the subject of this litigation. It is also shown that the plaintiff made objection to the promoters of the subdivision to the continuation of the two violations mentioned. He testified that he talked to Mr. Bradley, secretary of Park Terrace Company, and also to Mr. Ballard, about the violations, and that he talked to an attorney about the matter, but had not filed any suit against the violators.

[11] We have reached the conclusion that no grounds have been presented by appellant requiring at our hands a reversal of the judgment. It has been shown by the undisputed evidence that appellant breached the covenant, binding upon the parties, and in such case the court was justified in restraining by injunction a continuation of such breach.

In Anderson v. Rowland, 18 Tex. Civ. App. 467, 44 S. W. 914, it is said:

" 'The mere fact that a breach of the covenant is intended is a sufficient ground for the interference of the court by injunction. A covenantee has the right to have the actual enjoyment of the property mode et forma, as stipulated for by him. It is no answer to say that the act complained of will inflict no injury on him, or will be even beneficial to him. It is for the plaintiff to judge whether the agreement shall be kept, as far as he is concerned, or whether he will permit it to be violated. It is not necessary that he should show that any damage has been done. It being established that the acts of the defendant are a violation of the contract, the court will pro-

tect the complainant in the enjoyment of the right he has purchased.' 2 High, Inj. § 1158."

The matter above quoted was quoted with approval in Lowrance v. Woods, 54 Tex. Civ. App. 233, 118 S. W. 551. See, also, Curlee v. Walker, 112 Tex. 40, 244 S. W. 497; 32 Corpus Juris, p. 208, § 324.

For the reasons expressed, all of appellant's complaints are overruled, and the judgment is affirmed.

Affirmed.

## On Motion for Rehearing.

Appellant, in his motion for rehearing, complains of the statement made by us in our opinion that O. O. Ballard, president of the company (the Park Terrace Company), who sold the lot to appellant, was called as a witness by appellant.

[12] We admit that the statement complained of was inaccurate. The record shows that Ballard took the stand in behalf of himself and his codefendant Park Terrace Company. We do not, however, consider that such erroneous statement could result in injury to appellant, as the testimony given by Ballard on direct examination was to the effect that he explained the restrictions to appellant and read to him the contract for purchase of the lot by him, which contained such restrictions, and told him that, if the neighbors did not object to his temporarily occupying his garage as a residence, he (Ballard) would not object to such use, but that he had no authority to waive the restrictions for the company; that, if no one else objected, he (Ballard) had no personal objection. This testimony was given without objection by appellant or any one else. Its tendency was to show that Ballard had informed appellant that all purchasers of parts of the subdivision had an interest in the restrictions.

We think that as appellant had permitted the introduction of such testimony without objection, which tended to show that such restrictions were intended for all purchasers of parts of the subdivision, he is in no position to complain of the testimony given by Ballard on cross-examination.

With this admission and statement, the motion is refused.

Refused.