**J. W. BATON et al., Appellants,**

v.

**KEY PRODUCTION COMPANY et al.,
Appellees.**

No. 7040.

Court of Civil Appeals of Texas.

Texarkana.

June 3, 1958.

Rehearing Denied July 8, 1958.

Harrington & Harrington, Longview, for appellants.

Kenley, Sharp, Ritter & Boyland, Longview, for appellees.

CHADICK, Chief Justice.

This is an appeal from a temporary injunction granted appellees, Key Production Company, et al., temporarily restraining appellants, J. W. Baton, et al., from reworking, testing or drilling in an abandoned oil well bore hole. The judgment of the trial court is affirmed.

The facts pertinent to an understanding of the disposition made of this case will be recited. In 1953, Dr. David P. Gaines and his wife, Lena Alma Gaines, made a mineral lease to Charles W. Lutes covering some 1,100 acres of land, and requiring the drilling of a well to a total depth of 8,200 feet. Such well, known as the Gaines No. 1, was drilled in April 1954, and after electrical log was made, the well was declared non-productive of oil and abandoned, and so reported to the Railroad Commission of Texas. Shortly after the abandonment, on May 3, 1954, Alton Coats secured a new oil and gas lease from the Gaines covering the same property, and in March 1955, began the drilling of a second well, presently known as the Gaines No. 1–A well, 30 feet from the location of the older Gaines No. 1 well bore hole. The Gaines No. 1–A was completed as a producer in the Woodbine sand at a total depth of 3,770 feet. Thereafter, in January 1957, Alton Coats assigned H. J. Bissell a ⅞ interest in such lease and the remaining ⅛ to his daughter, Karen, whom the record shows to be a minor. Then in April 1957, H. J. Bissell and Karen Coats executed a release to the Gaines, releasing to them such rights and interests as they held under the lease to all of the land except 160 acres upon which the Gaines No. 1–A is located and additionally released to them all mineral rights and interests in that 160 acres between 4,000 feet and 8,200 feet. In this release is a provision reading:

> "As to the released property, no wells shall be drilled by Lessors, their successors or assigns, at a distance of less than 1,000 feet from the above mentioned well 1–A and not closer than 600 feet to any subsequent well or wells drilled by Lessors on the above described three tracts of land."

The appellants herein, J. W. Bissell, A. E. McCubbin and G. U. Yoachum, acquired an oil and gas lease on the "deep rights"; that is, the section between 4,000 and 8,200 feet from the Gaines by a mineral lease in August of 1957, and according to their answer filed in this case proposed to "test said 8200-foot hole for gas and oil in the Lower Pettit and in the Hill section of the Rodessa, lying between 4000 feet and 8200 feet, by entering said cut hole with 2½ inch tubing, reconditioning the mud, and cementing tubing to bottom at approximately 8000 feet, some 200 feet short of the drilled depth of the existing hole, and, thereafter, by gun perforating, acidizing and swabbing, make a test of the Pettit formations between 4000 feet and 8200 feet."

When appellants moved a rig to the Gaines No. 1 hole and began their operation, the appellees filed suit and secured a temporary restraining order, and upon hearing, a temporary injunction, the latter being the judgment which is before this Court for review. The record shows that this last judgment was superseded and the appellants thereafter proceeded with their

operation. The appellees pled that the language heretofore quoted restricting the drilling of a well nearer than 1,000 feet to the Gaines No. 1 is a restrictive covenant of which the appellants had notice (and notice is admitted in appellants' brief in this Court), and that the operations being carried on and threatened to be carried on by appellants constitute the violation of such covenant. They also alleged that irreparable injuries and damages in excess of $10,-000 would be done them unless the appellants be restrained and enjoined from the operation then in progress and besides praying for a temporary restraining order and temporary injunction prayed that appellants be perpetually enjoined from any kind and character of drilling operation within 1,000 feet of the Key Production, Lena Alma Gaines No. 1–A, or from the use of any drilling or work-over rig to go into the Gaines No. 1 abandoned well for any purpose and for general relief and costs of suit.

The defendants' answer contained several special exceptions. All were overruled by the trial judge, and will be discussed later in this opinion. Then answering to the merit, the appellants deny that they were violating the covenant respecting drilling within 1,000 feet of the Gaines No. 1–A, then alleged that they do not intend to drill a well within 1,000 feet and only proposed to test the Hill section of the Rodessa sand as heretofore set out.

Appellants' second special exception is that the appellees' pleadings are defective and no injunctive relief can be granted for the reason that Article 4644, T.R.C.S., requires pleading and proof in suits of this nature that the party against whom injunctive relief is sought cannot respond in damages, and that appellees' petition contains no allegation in this regard. The prime question raised by the special exception is whether or not the provisions of Article 4644 have application. It is held that they do not. The Article reads:

"No injunction or temporary restraining order shall ever be issued prohibiting sub-surface drilling or mining operations on the application of an adjacent land owner claiming injury to his surface or improvements or loss of or injury to the minerals thereunder, unless the party against whom drilling or mining operations is alleged as a wrongful act is shown to be unable to respond in damages for such injury as may result from such drilling or mining operations; provided, however, that the party against whom such injunction is sought shall enter into a good and sufficient bond in such sum as the judge hearing the application shall fix, securing the complainant in the payment of any injuries that may be sustained by such complainant as the result of such drilling or mining operations. The court may, when he deems it necessary to protect the interests involved in such litigation, in lieu of such bond, appoint a trustee or receiver with such powers as the court may prescribe, to take charge of and hold the minerals produced from the lands of those complained against or the proceeds thereof subject to the final disposition of such litigation."

■ There is no contention that the covenant previously set out is not valid and binding upon the appellants. It is the position of the appellants that they are adjacent landowners and as such compliance in pleading and proof with all the terms of the statute by appellees is a prerequisite to relief. The word "adjacent" has no fixed legal definition and its meaning varies with the context in which it is used. In the construction of this Article as it applies to the facts in this case, the word is not controlling and for the purpose of disposing of this case it may be assumed that the relation of the appellants and appellees is that of adjacent landowners. The nature of this suit has been set out in some detail for the purpose of showing that it plainly is a suit for the enforcement of a covenant, rather than one, to quote the words of Article 4644, "claiming injury to * * *

surface (of land) or improvements or loss of or injury to the minerals thereunder." The purpose of the injunction is not to prohibit sub-surface drilling or mining operations or the production of minerals under appellants' lease outside of the 1,000 feet radius excepted from drilling under the covenant, and save this restriction the appellants are left free to explore and develop the ramainder of the tract. The covenant confers a property right upon appellees and drilling within the area encroaches upon the use to which the land may be put and constitutes an invasion of appellees' rights therein and a trespass upon it. It has been held that any invasion of a property right is a trespass. Shell Petroleum Corp. v. Liberty Gravel & Sand Co., Tex.Civ.App., 128 S.W.2d 471, Hastings Oil Co. v. Texas Co., 149 Tex. 416, 234 S.W.2d 389, holds that Article 4644 is not applicable to a trespass upon land. It follows that the suit being to enforce a covenant and prevent a trespass, it is outside the terms of the statute. The fact that a violation of the covenant might result in loss or injury to the minerals found between the surface and 4,000 feet is incidental to the appellees' right to have the covenant strictly enforced and even a showing that no loss or injury to the minerals would be occasioned by sub-surface drilling cannot defeat the right of the appellees to require a strict observance of the obligation not to drill within 1,000 feet of the Gaines No. 1–A that appellants assumed in their deep-production lease. See Anderson v. Rowland, 18 Tex.Civ.App. 460, 44 S.W. 911 and Lowrance v. Woods, 54 Tex.Civ.App. 233, 118 S.W. 551.

■ The courts have frequently had occasion to apply their equitable injunctive power to enforce restrictive covenants such as this and have held that a temporary injunction is proper to maintain the status quo and a valid exercise of the equitable jurisdiction of the courts. Among such cases are: Chandler v. Darwin, Tex.Civ. App., 281 S.W.2d 363, 367; Pendleton v. Crabtree, Tex.Civ.App., 214 S.W.2d 675;

Crump v. Perryman, Tex.Civ.App., 193 S.W.2d 233; Lowrance v. Woods, supra; Anderson v. Rowland, supra. It is said in 12 Tex.Jur. p. 174:

"Relief may be had by way of the equitable enforcement of restrictive covenants, since no adequate remedy at law exists in the case of a breach of restrictions regulating the use of property, where the damages are not capable of exact computation, and the breach may be constantly recurring, thus necessitating repeated actions at law."

Having concluded that the provisions of Article 4644 are not applicable, examination of appellants' contention going to the merit of the application for temporary injunction is next undertaken. The appellants' prime defense on the merit is that the work they proposed to do was not a violation of the covenant because such work would not be drilling a well under the true meaning of the restrictive covenant. It is not contradicted that the old bore hole was to be used in making the tests appellants proposed. There is evidence in the record that at the time the well was abandoned cement plugs were spotted in it at places designated by the Railroad Commission and at a later date rock, bits, pipe, tool joints, some old bearings and cable were also put in the bore hole. From this the trial court could reasonably conclude that the operation that appellants proposed to carry out in the well could not be done without drilling in the bore hole and that such drilling would constitute a violation of the covenant as it would be drilling necessary to opening a well.

■ Assuming, as this Court must, that upon this and related evidence the trial judge found as a fact that the appellants were drilling or threatening to drill in the abandoned hole, it was well within his discretion to grant a temporary injunction as such evidence tends to support the allegations of the appellees' pleading. See Southwestern Greyhound Lines, Inc. v.

Railroad Commission, 128 Tex. 560, 99 S.W.2d 263, 109 A.L.R. 1235. In Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549, it was held that where pleadings and evidence present a case of probable right and probable injury to that right, the trial court is clothed with broad discretion in causing issuance of a writ of temporary injunction. The same case further holds that reversal will not be had except where abuse of judicial discretion is plainly shown. Under this record no abuse is shown.

Appellants by special exceptions to appellees' pleading brought forward in proper points of error complain of the court's failure to sustain their objection that Karen Coats was a minor and not properly before the court and insist that the trial court was in error in failing to sustain the special exceptions to appellees' pleadings failing to identify the individuals comprising Key Production Company.

■■ With respect to these two points, the record shows that H. J. Bissell held legal title to a ⅞ interest in the lease under which the Gaines No. 1–A was drilled. Karen Coats owned the other ⅛. The statement of facts reveals that on cross-examination H. J. Bissell testified that Key Production Company was made up of some 12 persons, naming himself and several others but not the entire 12, as those comprising the Company, and testified that he held the ⅞ interest in the lease as Trustee. Bissell as a co-tenant with Karen Coats and the others making up the Key Production Company could maintain the suit in the absence of his co-tenants. See 11 Tex.Jur. 506, and Hidalgo County Water Dist. No. 2 v. Cameron County Water Control & Imp. Dist. No. 5, Tex.Civ.App., 253 S.W.2d 294. Any error in failing to sustain these special exceptions does not require a reversal of the judgment entered; at most it would only require a modification as to parties.

■ Appellants contend that the trial court also erred in failing to sustain their special exception wherein they pointed out that under Rules 680, 682 and 683, Vernon's Annotated Texas Rules of Civil Procedure, the appellees' sworn petition failed to allege "specific facts" showing "immediate and irreparable injury, loss, or damage" and the orders entered fail to "define the injury and state why it is irreparable." The appellants seriously contend that these omissions from the pleadings and orders require a reversal. With respect to the necessity for the petition to allege detailed facts as to the nature and extent of the injury that would be suffered by the appellants, in the fore part of this opinion it is in effect held that the pleadings sufficiently detail such facts by alleging the threatened violation of the restrictive covenant. With respect to the orders failing to define the injury and to state why it is irreparable, as required by Rule 683, it is thought that the judgment is in substantial compliance with the Rule under the Supreme Court holding in Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549.

■ Appellants' last point asserts that the trial court erred in denying them a recovery of $2,925 damage they suffered during the five days the restraining order was in effect.

The hearing on the temporary injunction did not go to the merit of the case and recovery of damages in that proceeding was not an issue. The court could not at that hearing assess damages and render judgment in respect thereto. Haden Employers' Ass'n v. Lovett, Tex.Civ.App., 122 S.W.2d 230, wr. ref., and see 24–A, Tex. Jur. p. 302, Sec. 196.

The record shows that the trial court judgment was superseded. After the trial court's judgment was entered, appellees have made such tests of the abandoned Gaines No. 1 as they thought they were entitled to under the restrictive covenant.

**64**

Under such circumstances the provisions of the temporary injunction order are no longer at issue though the damage issue in the case still exists. A modification, therefore, of the temporary injunction order will serve no useful purpose as appellants do not now desire to proceed further with testing. The trial court may proceed to try the damage issues in accordance with the law of the case as expressed in this opinion.

Having carefully considered all of appellants' points of error and the argument and authorities in support of their contention, and finding that no reversible error is shown, appellants' several points are respectfully overruled.

The judgment of the trial court is affirmed.

DAVIS, J., disqualified and did not participate in this case.