**MONK et al. v. DANNA et al.**

No. 12530.

Court of Civil Appeals of Texas. Dallas.

Oct. 9, 1937.

Rehearing Denied Nov. 20, 1937.

H. T. Bowyer, of Dallas, for appellants.

Sarah Cory Menezes, of Dallas, for appellees.

LOONEY, Justice.

This appeal is from an order entered at the instance of the appellees, granting a temporary injunction, restraining appellants from completing the erection of a certain house on a lot in Bluff View estates, a suburban addition to the city of Dallas. Appellant Davis owned the lot in question; appellant Hahnel, builder and contractor, was engaged under contract in erecting the house; and appellant Monk evidently was made a party on suspicion that he owned some interest in the property; however, the facts revealed that he neither owned nor claimed any interest therein.

J .V. Stevenson, owner of 216.1 acres of land, platted the same into blocks and lots (223 in number), advertised and offered same for sale as being in a restricted residential district, and, prior to the institution of this suit, sold and conveyed all lots in the addition, except about 12. Each deed to the respective purchasers contained identical covenants and restrictions; in fact, were on same form. Appellant Davis, as well as the appellees, claims title under Stevenson; their deeds, among others, contain the following restrictions: "4. Servant house and garage may be erected and used as temporary living quarters under the following conditions: They shall be built not nearer to the front line of the lot than 100 feet; and on corner lots not nearer to the side street than 25 feet. They shall be neatly painted and the roof shall be gabled or hipped (no shed roofs permitted). 5. It is further covenanted and agreed that upon the breach of any of the foregoing conditions and covenants within twenty-five (25) years from June 1, 1924, that the title to the said premises shall ipso facto and immediately revert to and vest in said Seller, or his successors or assigns, or in any person or corporation to which he shall grant said reversion, and he or his successors or assigns shall be entitled to immediate possession thereof, but such reversion shall not affect any mortgage or other lien which may in good faith then be existing upon said premises or on any improvements thereon."

Neither the deeds, maps, plat, nor the dedication of the addition executed and filed for record by Stevenson, contain any language indicating that, the restrictive covenants in the deeds were intended for the benefit of other grantees, or that gave to either the right to enforce the same as against other owners. However, appellees alleged that, in fact, the restrictive covenants were for the common benefit of all lot owners, were mutually binding upon and enforceable by each, and that, in violation of same, appellants were constructing a one-story house on a lot in the addition, not intended for use as a garage or servant's house, costing less than the minimum restriction, to wit, $3,500; wherefore, they prayed for injunctive relief, both temporary and permanent.

Appellants answered by general denial, a special plea denying that there existed a general plan or scheme for the development of the addition with restrictions and·

covenants as to the use of the property mutually binding on all purchasers of lots; alleging further that, by their failure to protest the erection of the house in question until it was more than half completed, appellees were estopped to prosecute their alleged cause of action; also that appellees had waived any right they may have had to compel compliance with said restrictions and were estopped to prosecute their alleged cause of action, because, without objection, they had permitted the erection of approximately 25 structures in the addition similar in design and cost to the house in question, some of which had been in use for seven or eight years.

After an exhaustive hearing, the court granted the temporary injunction, from which appellants prosecuted this appeal.

■ Appellants' proposition, that the evidence failed to show that there existed binding restrictive covenants, is based upon the idea that same were not evidenced by an instrument in writing as required by statute. As before mentioned, there is nothing in the deeds executed by the common grantor, or in the recorded plat or dedication executed by him, showing that the restrictive covenants in the deed were intended for the benefit of other grantees, or that gave to either the right to complain of their violation. Under an express provision in the deeds, the grantor (Stevenson) alone (or his successor or assign) was entitled to take advantage of a breach of the covenants. Standing alone, and aside from matters extrinsic written instruments, the presumption should be indulged that the restrictions were inserted in the deeds for the benefit alone of the grantor. Davis v. Skipper, 125 Tex. 364, 83 S.W.2d 318, 322. An easement or servitude, being an interest in land, cannot be created other than by an instrument in writing. See Rev.Stats. art. 1288; Parsons v. Hunt, 98 Tex. 420, 84 S.W. 644, 646; Miller v. Babb (Tex. Com.App.) 263 S.W. 253; Pierson v. Canfield (Tex.Civ.App.) 272 S.W. 231. However, as contended by appellees, the doctrine has so often been announced in this state and by courts the country over, as not to admit of further debate, that, where the owner of a tract of land subdivides it and sells distinct parcels thereof to separate grantees, imposing restrictions upon its use pursuant to a general plan of development or improvement, such restrictions may be enforced by any grantee against any other grantee, either upon the theory that there is a mutuality of covenant and consideration, or upon the ground that mutual negative equitable easements are created. Where parcels are sold with reference to such a uniform plan to persons having notice thereof, the grantees may enforce the restrictions within this rule, irrespective of the order of the several conveyances, and irrespective of whether the covenants run with the land. See 18 C.J. pp. 394, 395, § 459. The leading case in this state on the subject is Hooper v. Lottman (Tex.Civ.App.) 171 S.W. 270, by the El Paso court. The able opinion by Judge Higgins in that case, was adopted by the Supreme Court in Curlee v. Walker, 112 Tex. 40, 244 S.W. 497, and was followed in Hill v. Trigg (Tex.Com.App.) 286 S.W. 182; Green v. Gerner (Tex.Com. App.) 289 S.W. 999; Couch v. Southern Methodist, etc. (Tex.Civ.App.) 290 S.W. 256; Plaster v. Stutzman (Tex.Civ.App.) 8 S.W.2d 750; and Scott v. Champion Bldg. Co. (Tex.Civ.App.) 28 S.W.2d 178.

As this case is yet to be tried on its merits, we express no opinion as to the probative value of the evidence, except to say that, in our opinion, the issue presented in regard to the existence, whether or not, of a uniform restricted residential district with restrictions mutually binding upon all grantees was raised by the evidence; also the defensive issue as to whether the house under construction was intended as a servant's house and garage to be temporarily used as living quarters, as contemplated by the deed, also the issues as to estoppel and waiver, as pleaded, were raised by evidence.

■ We overrule appellants' assignment complaining of the action of the court in admitting over their objection the testimony of Porter Lindsley, to the effect that all deeds executed by Stevenson to lots in the Bluff View estates contained similar restrictions. The deeds to the litigants were in evidence, and contained identical restrictions. As the titles of other grantees were not involved, their deeds, containing similar restrictions, were only collaterally involved, hence we do not think the court erred in admitting the evidence. 22 C.J. 994.

■ In connection with other evidence introduced on the issue, we do not think the court erred in permitting Lindsley to testify in regard to the intention of Steven-

son in platting the land, in dedicating the streets, and in placing uniform restrictive covenants in each deed executed by him. See Plaster v. Stutzman (Tex.Civ.App.) 8 S.W.2d 750, 753; Wilson Co. v. Gordon (Tex.Civ.App.) 224 S.W. 703, 706.

As appellees are seeking to enforce restrictions on the use of land claimed by appellants, obviously appellees have the burden of showing that, under the scheme or plan adopted, it was intended and mutually understood that the restrictions should inure to the benefit of all lot owners, and that appellant Davis had notice of such scheme, purpose, and intention when he purchased the lot in question, for, unless he had such knowledge or notice, it cannot be said that he entered into the scheme, or assumed the mutual obligation. So, in the absence of a writing evidencing the fact, that is, whether the restrictive covenants were intended to inure to the benefit of all grantees, a question of fact is presented in regard to which the burden rests upon those seeking to enforce the restrictions to establish by a preponderance of evidence that those sought to be charged either knew or had notice of the scheme and the mutuality of rights and obligations at the time of their purchase. Such knowledge or notice may be proven as any other fact, either by direct or circumstantial evidence. Davis v. Skipper, 125 Tex. 364, 83 S.W.2d 318, 321, 322.

We overrule all assignments in regard to the propositions discussed. This brings us to the final and material question presented, that is, Did the court abuse its discretion in granting the temporary writ? We think so, for the following reasons: The structure in question is properly located upon the lot as a servant's house and garage, and is suited for such purposes, the only issue of fact is in regard to the intention of the parties as to its use, which will be determined when the case is finally tried; however, we do not think its completion and occupancy, in the meantime, will visit any appreciable damage on appellees, or mar the scheme of the restricted district. If, on final trial, appellants are found guilty of violating the restrictions, appellees may appropriately be protected by a mandatory order, requiring either full obedience to the covenants of the deed, or else removal of the structure. On the other hand, if appellants triumph on final trial and, in the meantime, are prevented from completing and occupying the building, they will suffer a

distinct and measurable damage. In such a situation, it is our duty to take into consideration and balance the relative conveniences and hardships of the parties, and determine whether there is probability of a greater damage, if the writ is issued, than that of complainants, if the writ be denied. See Gill v. Hudspeth County Conservation & Reclamation Dist. No. 1 et al. (Tex.Civ. App.) 88 S.W.2d 517, 519; 24 Tex.Jur. (subject, Injunctions) p. 124, § 87, and p. 136, § 96. Applying this rule, we think the court abused its discretion in granting the writ, and same is hereby dissolved, but without prejudice to the rights of appellees on final hearing, if triumphant, to have the restrictive covenants in the deeds complied with.

Reversed and rendered, dissolving the writ.

### On Rehearing.

In the motion for rehearing, appellees complain of our failure to sustain their motion to dismiss the appeal. We considered the motion and overruled it, but, through oversight, no order was entered. The motion is based upon the alleged misdescription of the judgment, in that, in the appeal bond the judgment is described as having been rendered on June 8, 1936, whereas the record discloses that it was actually rendered June 8, 1937. The error is typographical and obviously is corrected by the record, in that, it is disclosed that the suit was not instituted until May 18, 1937, and all proceedings had therein were subsequent to that date. Besides, the defect in the bond being a mere informality, amendable under the statute (Vernon's Ann. Civ.St. art. 1840—A), the motion raising the question, under rule 8 governing this court, should have been filed within 30 days after the filing of the transcript, which was not done. The motion to dismiss is overruled.

In paragraph 2 of the motion, appellees say we erred in stating that appellants' answer alleged "that by their failure to protest the erection of the house in question until it was more than half completed, appellees were estopped to prosecute their alleged cause of action"; the contention being that appellants' answer contained no such allegation. Counsel for appellees is correct in saying that the allegation referred to did not appear in appellants' answer; however, the contention of appellants, in the respect mentioned, was cor-

rectly stated, although not appearing in their answer, it was set forth very distinctly in proposition No. 6 of appellants' brief. In paragraph 3, appellees say we erred in stating that, "appellants alleged by their answer that appellees had permitted the erection of 'approximately 25 structures in the addition similar in design and cost to the house in question, some of which had been in use for seven years'; the answer specifying only 12 structures in the addition alleged to be similar in design and cost to appellants' structure, and further alleged 'there are other structures on other lots in the addition that do not comply with the alleged restrictions.'" Again, as a mere literalism, counsel's criticism may be correct, but is incorrect in substance, in that, in their answer, appellants mentioned 10 or 12 instances (also others of a similar nature without mentioning the number) where the same character of houses as the one under construction by Davis were erected and had been in the addition for 7 or 8 years, in regard to which appellees did not complain or protest; hence, the contention that they were estopped to complain against appellants. Also, in their brief, proposition No. 7, appellants contend that, because appellee, without objection, permitted "about twenty-five structures in the addition similar in design to the house in question, some of which have been in the addition for seven or eight years," they were estopped to complain against appellants. We have noticed the above objections, not because of their materiality, but for the sake of accuracy.

In our statement of the nature of the suit, mentioning the parties, we said: " * * * appellant Monk evidently was made a party on the suspicion that he owned some interest in the property. However, the facts revealed that he neither owned or claimed any interest therein." In paragraph 4 of their motion, appellees say: "The court erred in finding that appellant Monk neither owned nor claimed any interest in the house in question, there being no evidence to support the finding. The evidence showed that appellant Monk had participated in and was interested in the construction of the house." With reference to this matter, the record fails to disclose any writing showing that Monk owned any interest in the property, but did disclose that he was a real estate broker and builder, and had had dealings with Mr. Hahnel, the contractor. Being asked, "What is your connection with the construction of this house in controversy?" he answered, "At the time this house was started, Mr. Hahnel had, as I understood, entered into a contract with Mr. Davis to erect this particular type of house. During that time Mr. Hahnel had also been looking after some building for me because I didn't have time to run my own business and look after it. During that time Mr. Hahnel was employed by the Government as an assistant appraiser, and he asked me if I would go out and look after the supervising of this building, see that payrolls were made up and the material delivered on the job and the men got through with the construction. Other than that I had no connection with it." At another point, Monk said that he furnished $211.68 of his own money to pay the men working on the job, and that he was looking to Hahnel for reimbursement; again was asked, whether he was planning to sell the house, and answered, "Got no price on it to sell at all. I haven't been instructed to sell it." So, in view of Monk's testimony, in the absence of any writing showing that he owned any interest in the premises, we think our statement as to him, heretofore quoted, is correct, and the same will be adhered to.

The original opinion states the reasons for our holdings, and, in our opinion, is a sufficient answer to the grounds alleged for rehearing. After due consideration, the motion is overruled.

Overruled.