Martin BEIN et al., Appellants,

v.

J. D. McPHAUL, Appellee.

No. 7147.

Court of Civil Appeals of Texas.

Amarillo.

May 7, 1962.

Key, Carr, Carr & Clark, Lubbock, for appellants.

Timberlake & Wassell, Lubbock, for appellee.

CHAPMAN, Justice.

Appellants, Martin Bein and wife, Eugina Bein, and James H. Brown and wife, Deana Brown, sought damages in the Court below against Mrs. Inez Sloan, d/b/a Sloan's Nursing Home, and J. D. McPhaul for alleged violation of a building restriction in Bender Terrace Addition to the City of Lubbock by the construction of a nursing home to be used for the care of aged people on Lot 92 in the addition. A motion for summary judgment was granted J. D. McPhaul. Appellants dismissed as to Inez Sloan, d/b/a Sloan's Nursing Home and have perfected their appeal from the take nothing judgment against them.

All emphasis herein are ours.

The first point of error asserted is that there was a disputed issue of material fact as to whether Bender Terrace Addition to the City of Lubbock was developed pursuant to a scheme of development for residential purposes only and the only other point is that " * * * there were disputed issues of material fact regarding the defendant's being estopped to deny that Lot 92 * * * was restricted exclusively to residential uses." We shall consider the points together.

The addition consists of 313 lots carved from approximately 92 acres of land platted and dedicated at different times over a 2½-year period in 9 separate tracts or segments of land. Each dedication deed contains the applicable restrictive covenants for that particular tract.

Appellants own lot 81 and the West 60 feet of lot 80 of the tract, or segment, of the addition consisting of lots 52 through 87. The plat and dedication deed consisting of these 35 lots show recordation on March 3, 1959. The Browns and Beins purchased their lots respectively on the dates of June 16, 1959 and in September, 1959.

Appellee owns lot 92, which was platted and dedicated on May 5, 1959 and filed for record on June 4, 1959.

Paragraph 9 of the covenant affecting appellants' property provides as follows:

" * * * Notwithstanding anything to the contrary herein contained the provisions of this instrument shall apply only to lots 52 through 87, both inclusive of said Bender Terrace Addition."

Paragraph 9 of the covenant affecting appellee's property reads as follows:

" * * * Notwithstanding anything to the contrary herein contained the provisions of this instrument shall apply only to lots 93 and 94 of the said Bender Terrace Addition, except paragraph 3 hereof which applies to lot 92."

Paragraph 10 of the same instrument provides:

" * * * Lot 92, being zoned R–3, shall be subject to the erection of a multi-family dwelling in accordance with ordinances promulgated by the city of Lubbock."

It is also to be noted that paragraph 10 just quoted was amended by an instrument executed by all the lot owners of said tract: eg. the owners of lots 92, 93, and 94, and as amended reads as follows:

" * * * Lot 92, being zoned R–3 may be used for a multi-family dwelling or any other purpose authorized under the R–3 classification of the zoning ordinances of the City of Lubbock."

In the motion for summary judgment appellee pleaded that the lots owned by appel-

lants were a group of lots platted, dedicated, and restricted by a separate and distinct plat and dedication deed and that the restrictive covenants imposed thereon were entirely different to those imposed upon lots 92, 93, and 94.

The instruments filed in connection with the application for summary judgment confirmed the pleadings just recited and also showed the Lubbock City Ordinance promulgated on February 12, 1959 wherein the area containing lots 88 through 92 was zoned R–3, and also showed maps or plats showing the R–3 zoning and the buffers between the residential only property and the Brownfield Highway, part of which was lot 92 and part of which showed lots zoned for church property. These maps are herewith reproduced:

The record also shows an affidavit made by the Vice-President of Bender Terrace Addition, Inc. ever since the corporation was formed, accompanied by plats showing that the restrictive covenants imposed against the various sections of the addition were all different from one another, each particular section being independent of the other and each being platted, dedicated, and restricted according to the ideas of the developers; that of the 313 lots included in the 9 separate sections a number were restricted for single family residences, some for apartments, some for duplexes, at least one for a church, and several for any purpose permitted under the R–3 classifica-

tion; that the developers never had any intention of developing the 92-acre tract into lots limited solely to single family residences for the reason that a substantial portion lies along the Brownfield Highway and another portion adjacent to the Smiley-Wilson Junior High School; that the plan of the developers was to have portions zoned R–2 and R–3, which permitted duplexes, apartments, doctor's clinics, etc.; that they never held out to the public otherwise and that such was public information and knowledge in view of the fact that they made application for such zoning on several occasions.

Appellants allege the Bender Terrace Addition was developed pursuant to a scheme to make it an attractive, exclusive, residential district and that said allegations are not controverted in the affidavit. We believe what we have said about the record in the preceding paragraphs and what we shall say hereafter show a complete contradiction of the allegations to the effect that the entire addition was developed pursuant to a scheme to make it exclusively a residential district, as do the plats reproduced above, and that the record shows as a matter of law that the entire addition was not developed pursuant to such a scheme.

The record shows the covenants, each segment by their own terms, affect and pertain only to the particular segment or tract being dedicated, *that the land embracing Lot 92 was zoned R–3 prior to the time the lots owned by appellants were platted,* and that at the time they purchased their lots anyone examining the records would have learned of these separate conditions included in the nine different segments. The record also shows that paragraph 10 of the restrictions affecting that segment which included Lot 92 was amended by agreement of all the lot owners of that segment of the addition which, together with the rules promulgated by the City of Lubbock for R–3 zoning, permitted it to be used for a multi-family dwelling or any other purpose authorized under the R–3 classification of the zoning ordinance of the city. That type zoning ordinance permitted churches, convalescent homes, multi-family dwellings, nurseries, hospitals, apartment houses, museums, art gallery's, etc.

We think an analysis of the plats reproduced above shows considerable study and careful planning by which the developers were careful to make a buffer zone between the C–4 commercial area across the Brownfield Highway to the west and north and the R–1 residential zoning of the area south of 27th St. and east of the alley at the rear of Lot 92. In any event it shows a condition or situation contrary to appellants' contention that the entire Bender Terrace Addition, with its nine separate and distinct segments, each containing its separate covenants was developed pursuant to a scheme of development for residential purposes only. The dedication deeds recite the consideration for their execution was the special benefit to the remainder of the property of the dedicator and we believe the record shows very clearly that the buffer zone method used would certainly be of special benefit to the other areas owned by the developers. Additionally, each dedication deed provided the covenants therein were to run with the land and should be binding on all parties claiming under them for a period of 25 years *"from the date these covenants are recorded."* Since the segments contained different restrictions and were dedicated at different times these facts themselves showed a lack of uniformity or common plan and showed a lack of mutual and reciprocal burdens on all lots similarly located. Gray v. Lewis, Tex. Civ.App., 241 S.W.2d 313 (N.R.E.). Even if we were to say a general, uniform plan for development was shown, which is not true in the instant case, not only would it have been necessary to show that fact, Calvary Temple v. Taylor, Tex.Civ.App., 288 S.W.2d 868, but it would also have been necessary to show *it was intended* that the restrictive scheme should enure to the bene-

fit of all owners of property in the addition. Monk v. Danna, Tex.Civ.App., 110 S.W.2d 84 (Writ Dismissed).

■ An affidavit by N. W. Whitwell that a salesman by the name of Eledge contacted him *on behalf of Bender Terrace Addition, Inc.* and represented to him that the entire addition was being developed pursuant to a scheme to make it exclusively a residential district is simply a conclusion of law and fact made by the affiant. It does not even show that the salesman represented he was making statements on behalf of the developers and shows no authority in either the salesman or affiant to bind the developers nor to represent the addition was restricted in such manner that it would be a highly exclusive residential area, or even exclusively residential. Additionally, the affidavit stated the affiant was advised that some lots near the cul-de-sac on 27th St. were restricted so apartments could be built thereon. Of course a builder, as the record shows Mr. Whitwell was, would be presumed to know that apartment houses carried R–3 zoning and its permissible use. Further, there is no statement in the affidavit that any representation made by the salesman was ever communicated to appellants so as to bring appellee within the rules of an estoppel. The affidavit does not, even by a conclusion of the affiant, seek to show what connection, if any, Meek, Osborne and Terrell had with the developers who platted and dedicated the addition. Such affidavits would constitute no evidence of the facts sought to be established in this case in view of the abundance of actual and constructive summary judgment evidence to the effect that the addition was not developed pursuant to a scheme of development for residential purposes. The conclusion of the affiant that Ray Eledge contacted him *on behalf of the addition* would not be admissible in evidence in a trial on the merits to show he had the authority to speak for the developers but was only a conclusion or opinion by the affiant that he contacted him *on behalf of the develop-*

*ers of the addition.* This is not sufficient under Rule 166–A, V.A.T.R. Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396, 399; Munoz v. Heights Savings & Loan Association, Tex.Civ.App., 319 S.W.2d 945; Heath v. City of Abilene, Tex.Civ.App., 337 S.W.2d 179, 180; Farmers State Bank v. First State Bank of Liberty, Tex.Civ.App., 317 S.W.2d 768; Franklin Insurance Co. v. Rogers, Tex.Civ.App., 316 S.W.2d 116.

Several affidavits were also made to the effect that some signs were erected in or near the addition which contained the word "restricted" but they did not swear to the limitations to which the signs attempted to restrict the addition. The fact that they could only remember the word "restricted" would not raise even an inference that it was restricted exclusively to residential use, even though the word "restricted" lead them to so believe.

■ The owner of land may impose such conditions and restrictions as he sees fit and proper provided they do not contravene public policy and the contracts are not otherwise illegal. Curlee v. Walker et al., 112 Tex. 40, 244 S.W. 497.

■ "Whether a person not a party to a restrictive covenant has the right to enforce it depends upon the intention of the parties in imposing it. This intention is to be ascertained from the language of the deed itself, construed in connection with the circumstances existing at the time it was executed." Russell Realty Co. et al. v. Hall et al., Tex.Civ.App., 233 S.W. 996 (Writ Dismissed). Therefore, as a matter of law, appellants purchased their lots knowing that the provisions of their plat and dedication applied only to Lots 52 through 87 and knowing either personally or constructively of the R–3 zoning to the west and north of the lots they purchased and hence that the addition was not developed pursuant to a scheme of development for strictly residential purposes. A person is bound by restrictive covenants

attaching to property of which he has actual or constructive notice and is chargeable with notice of all conditions, restrictions, exceptions, or reservations appearing in his chain of title concerning which he is put on notice. Chandler v. Darwin, Tex. Civ.App., 281 S.W.2d 363; Spencer et ux. v. Maverick, Tex.Civ.App., 146 S.W.2d 819, Syl. 5.

In construing the covenants restricting the use of the land and the methods by which each segment was restricted without regard to the others the trial court had the right to resolve all doubts in favor of the freer use of the property and against restrictions. Southhampton Civic Club et al. v. Couch, 159 Tex. 464, 322 S.W.2d 516; Baker et al. v. Henderson, 137 Tex. 266, 153 S.W.2d 465.

As heretofore stated, this is an appeal from a summary judgment granted appellee. The burden was upon the movant, J. D. McPhaul, to show there was no genuine issue of fact as to the cause of action asserted by plaintiffs below, appellants here. Gulbenkian et al. v. Penn, 151 Tex. 412, 252 S.W.2d 929.

"When a motion for summary judgment is supported by affidavits, depositions, stipulations or other extrinsic evidence sufficient on its face to establish facts, which if proven at the trial, would entitle the movant to an instructed verdict, the opponent must show opposing evidentiary data which will raise an issue as to a material fact, or must justify his inability to do so and seek appropriate relief under subdivision (f) of Rule 166-A." Gulf, Colorado & Santa Fe Railway Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492, 500. It follows from what we have said throughout this opinion that we do not believe appellants showed opposing evidentiary data which raised an issue as to a material fact. Accordingly, the judgment of the trial court is affirmed.