**WREN MORTGAGE COMPANY, INC., Appellant,**

v.

**TIMBER LAKES AND TIMBER RIDGE ASSOCIATION, INC. et al., Appellees.**

No. 8506.

Court of Civil Appeals of Texas, Beaumont.

Dec. 31, 1980.

Rehearing Denied Jan. 29, 1981.

---

Charles E. Fitch, Houston, for appellant.

Stephen W. McClain, Conroe, W. Briscoe Swan, Houston, Gary Lawn, Woodlands, Ronald J. Stark, Houston, for appellees.

CLAYTON, Justice.

Wren Mortgage Company, Inc., appellant, filed this suit for declaratory judgment against Gibraltar Savings Association, Timber Lakes and Timber Ridge Association, Inc., and other named defendants, appellees, seeking a declaration that a certain 31.78 acre tract of land it owns in Montgomery County does not lie within a certain subdivision known as Timber Lakes Section 3B, and is not part of the plan or scheme of development of said subdivision, is not burdened with certain restrictions pertaining to said subdivision and for a declaration that such property may be used for a sand and gravel pit. The relief prayed for was denied by the trial court.

CWB Corporation, on March 5, 1968, executed a plat of a certain 70.67 acre tract and designating such subdivision as Timber Lakes, Section 3B. This subdivision contained 187 residential building lots. On the same date CWB Corporation, as owner of all real property within such subdivision, executed an instrument, relating only to

such platted area, entitled "Timber Lakes Restrictions, Sec. No. 3B," which imposed certain restrictive covenants "regarding the use thereof." This instrument was recorded in Vol. 658, Page 907, et seq. of the Deed Records of Montgomery County. On November 5, 1979, CWB Corporation, as owner of all property within the subdivision, executed an instrument, again relating only to such platted area, entitled "Amendment to Timber Lakes Restrictions Sec. No. 3B," which purported to amend the original restrictions. This instrument was recorded at Vol. 697, Page 302, et seq. of the Deed Records.

By general warranty deed dated January 19, 1973, CWB conveyed the premises involved herein to Mildred Stoerner, retaining a vendor's lien. Upon default in payment of the vendor's lien note, and upon foreclosure proceedings, the property was sold to appellant. Since its acquisition of the property, appellant has attempted to negotiate a sale of the property to a purchaser that intended to use it for a sand and gravel operation. However, this sale has not been consummated because of the claim of residents in the area that the property is restricted to residential use only.

The deed from CWB to Stoerner contains the following clause:

"Subject to the reservations, restrictions, and covenants of record against said property interest hereinabove set out, according to the Deed Records of Montgomery, Texas in Volume 697, Page 302 and Volume 658, Page 907."

It is clear that the restrictions described in Vol. 697, Page 302 and Vol. 658, Page 907 in the Deed Records of Montgomery County specifically apply to Timber Lakes, Section 3B, and not to appellant's property. It is further undisputed that such restrictions would not permit the sand and gravel operations upon any *lots* located in Timber Lakes, Section 3B, and that appellant's property does not lie within the boundaries of Timber Lakes, Section 3B.

Appellant's property is located within the boundaries of a subdivision described as Spring Acres, Section 2. This subdivision is contiguous to Timber Lakes, Sec. 3B, but is not a part thereof. A portion of Spring Acres No. 2 is divided into lots, according to an unrecorded plat which is in evidence and a part of the record before us. The 31.78 acre tract owned by appellant is not so divided. There are certain recorded restrictions "regarding the use and/or improvements on the lots located in said Spring Acres, Section Two." All of such restrictions relate to the residential purposes of the lots located therein. The instrument containing such restrictions states: "All lots in Spring Acres, Section Two, unless otherwise designated on the unrecorded plat of this subdivision shall be known and designated as 'Residential Lots' and shall be used for residential purposes only." There is no contention that these restrictions limit the use of appellant's property. However, appellees contend the restrictions contained in those applying to Timber Lakes—3B apply to and restrict and limit the use of appellant's property.

■ The first question to be decided on this appeal is whether the recitation in the CWB deed to Stoerner burdens appellant's property with the restrictions recorded in the "Deed Records of Montgomery County, Texas in Volume 697, Page 302 and Volume 658, Page 907" relating to Timber Lakes—3B. The answer to this question is determined by a construction of the language used in the Stoerner deed. In construing covenants restricting the use of land, all doubt should, as a general rule, be resolved in favor of the free use of property and against restrictions. *Southampton Civic Club v. Couch,* 159 Tex. 464, 322 S.W.2d 516 (1958); *Baker v. Henderson,* 137 Tex. 266, 153 S.W.2d 465 (1941); *Bein v. McPhaul,* 357 S.W.2d 420 (Tex.Civ.App.—Amarillo 1962, no writ).

■ The language used in the Stoerner deed seeks to impose upon appellant's property certain "reservations, restrictions and covenants *of record against said property interest* hereinabove set out. . ." A reasonable construction of this language is that the restrictions referred to are those filed

of record affecting this property. The reference to the volumes and page numbers of the deed records does no more than refer to the deed records where such restrictions are found. Such reference would be to the restrictions filed of record affecting and applying to appellant's property which is located within Spring Acres, Section Two. The words "according to" the Deed Records of Montgomery County mean that such restrictions of record affecting appellant's property are as declared by those located in Volume 697, Page 302 and Volume 658, Page 907. The restrictions referred to by volume and page number are imposed upon all residential lots located within the Timber Lakes—3B subdivisions and not to Spring Acres, Section Two. As we construe the clause in the Stoerner deed, the restrictions referred to as "those of record" are no more than a recitation that the conveyance is "subject to all of the restrictions now in force." Recitals of this type are designed to protect a grantor in the event there are any restrictions on property in effect at the time of a conveyance. Thus, the insertion of such recitals in deeds is merely precautionary. *Wiley v. Schorr*, 594 S.W.2d 484 (Tex.Civ.App.—San Antonio 1979, writ ref'd n. r. e.). Appellant's property is not burdened with the restrictions imposed upon the lots in Timber Lakes, Section 3B. Moreover, the restrictions to Timber Lakes —3B apply to all residential lots as designated upon the map or plat of such subdivision. Such restrictions provide:

"All lots in said 'Timber Lakes' Section 3B unless otherwise designated on the . . . map or plat of this subdivision shall be known and designated as 'Residential Lots' and shall be used for residential purposes only . . ."

The map or plat of such subdivision shows the entire area as being designated as residential lots. The restrictions concern building location, lot area, use, garages, driveways, cost of dwellings, construction materials, and other restrictions—all of which apply to the use of the individual lots for residential purposes. Appellant's property is a tract of 31.78 acres, none of which has been divided into lots. As a practical mat-

ter, these restrictions in Timber Lakes—3B could not be used or applied to appellant's acreage. For the reasons stated, we hold that appellant's property is not burdened with the restrictions imposed upon Timber Lakes 3B subdivision.

Appellant attacks the trial court's finding that "A general plan or scheme was implemented in accordance with property restrictions placed of record by CWB Corp. in the deed records of Montgomery County, Texas" for the reason such finding is not legally supported by the evidence. We agree.

■ One of the most common forms of imposing building restrictions is by the establishment of a general plan of improvements or development covering a tract divided into a number of lots. The most common test of the existence of a general building or neighborhood scheme is an intent that the protection of the restrictive covenant inure to the benefit of the purchasers of the lots in the tract. *Lehman v. Wallace*, 510 S.W.2d 675 (Tex.Civ.App.— San Antonio 1974, writ ref'd n. r. e.).

■ The trial court, in its conclusion of law, held that appellant's property is a part of the general plan and scheme of "Timber Lakes—Timber Ridge Subdivision." The undisputed evidence shows that even though CWB at one time owned several different tracts of land in the immediate area of appellant's property, CWB did not plat or develop such properties as one subdivision and did not execute any instrument seeking to impose restrictions upon all such tracts as a single entity. CWB subdivided and separately restricted nine different tracts of land.

In an instrument dated March 5, 1968, CWB provided for certain restrictions and contained this language:

". . . CWB—in its desire to keep the development of said real property for the mutual benefit and pleasure of the property owners *in said subdivision*, and for the protection of such property values *thereon*, desires to place on and against · *said property* certain protective and restrictive covenants regarding the use

**622**

thereof. Now, therefore, ... CWB ... does hereby make and file the following ... reservations, protective covenants ... regarding the use thereof on the lots located in said 'Timber Lakes—Section No. 3B'..."

This instrument further provided:

"After CWB Corp., the developer, shall have sold 80% of the lots in this subdivision, any or all of the covenants herein may be annulled, amended or modified at any time by a vote of two-thirds of the Board of Directors of the Timber Lakes Association, upon the recommendation of the architectural control committee, and ratified by a majority of the lot owners in the unit in which such amendment is proposed."

The above clauses appear in the restrictions imposed upon nine different subdivisions platted and restricted at different times.

The nine instruments, setting forth the restrictions in nine separate subdivisions, conclusively negate the idea that there was any plan or scheme applicable to the entire tract originally owned by CWB, and now consisting of nine subdivisions. Each instrument expressly provides that the restrictions, in each subdivision, may be changed or abolished by a majority of the lot owners within either subdivision separately from and regardless of the other property owners in other subdivisions. It is thus made apparent that there is no mutuality or reciprocal uniform covenant providing for a general plan or scheme of restrictions for the entire nine subdivisions or the single subdivision known as "Timber Lakes—Section 3B" and appellant's 31.78 acre tract. See *Davis v. Congregation Shearith Israel*, 283 S.W.2d 810, 814 (Tex. Civ.App.—Dallas 1955, writ ref'd n. r. e.).

The judgment of the trial court is reversed, and we here render judgment that appellant's property is not burdened with any of the restrictions pertaining to Timber Lakes Section 3B, as reflected by the plat of record at Volume 8, Page 25 of the Plat Records of Montgomery County, Texas, and as evidenced by instruments appearing in Volume 658, Page 907, and Volume 697,

Page 302 of the Deed Records of Montgomery County, Texas.

REVERSED and RENDERED.