**L. J. SCOTT et ux., Appellants,**

v.

**Bob RHEUDASIL et al., Appellees.**

**No. 18552.**

Court of Civil Appeals of Texas, Fort Worth.

April 2, 1981.

Rehearing Denied April 30, 1981.

Locke, Purnell, Boren, Laney & Neely, and Nathan L. Hecht, Dallas, for appellants.

Gray, Whitten & Loveless and Michael J. Whitten, Denton, for appellees.

## OPINION

HUGHES, Justice.

L. J. Scott and his wife Effie Ruth have appealed a temporary mandatory injunction ordering them to remove their house trailer from their lot in the Flower Mound Farms Addition in Denton County, Texas. Bob Rheudasil, Jim Watts and John Stockton (Plaintiffs), as owners of property within the Addition, brought this suit to enforce a restrictive covenant filed of record by Flower Mound Farms, Inc., a defunct Texas corporation.

We affirm.

The pertinent provisions of the restrictive covenant relied upon by the Plaintiffs read as follows:

"These covenants shall be deemed covenants running with the land and shall be

binding on each and all of the owners of the lots, tracts and property contained within the above designated subdivision, and shall be binding upon all present and subsequent owners of any lot, tract or parcel within said subdivision, and the acceptance of any person of title to any of said lots, tracts or parcels shall constitute such person's acceptance and joinder in said covenants, and all of said covenants are made with and for the benefit of the developer, Flower Mound Farms, Inc., and if any party hereto or any present or subsequent owner of any lot, tract or parcel within the said subdivision, or their heirs, successors and assigns, shall violate any of the covenants herein, the developer, Flower Mound Farms, Inc. (hereinafter referred to as developer), shall have the exclusive right to file and prosecute any proceedings at law or in equity against the person or persons violating, threatening to violate or attempting to violate any of such covenants, and it is expressly agreed and understood that said developer shall be entitled to secure an Injunction, Restraining Order or other equitable process, and to also proceed to recover damages for such violation; or said developer may if it so elects, in writing authorize any other owner or owners within the subdivision to bring all such actions in their own name to the same extent as could the developer itself, or the developer may if it desires, and it hereby expressly reserves unto itself the right to relieve and forgive any violation of the covenants which in its exclusive discretion it determines will not substantially depreciate or materially lower the desirable character of the addition as a whole. The developer reserves the right at any time or times to assign any, each, or all of its rights, limitatives, (sic), or privileges under these restrictive covenants to any other person, firm or corporation.

"These covenants shall be binding on all of the owners of the lots and property contained within Flower Mound Farms, and shall be binding on all subsequent owners of any lot or property within said subdivision from the date hereto until January 1, 1995.

"These covenants shall automatically be extended for a successive period of ten (10) years unless, by a vote of a ¾ majority of the then lot owners of the lots in this subdivision (each lot having one vote), it is agreed to amend or release same.

" . . .

"E. NO HOUSE TRAILER, TEN (SIC) OR SHACK shall be placed, errected or permiteted (sic) to remain on any lot, not (sic) shall any structure of a temporary character be used at any time as a residence."

By their first two points of error the Scotts contend that the trial court erred in granting the temporary mandatory injunction because the express provisions of the covenant deprive the Plaintiffs of standing to enforce the covenant and therefore, the Scotts have been given no notice, actual or constructive, that Plaintiffs have any right of enforcement.

 Enforcement of a restrictive covenant by one grantee against another grantee generally requires a showing of a general plan or scheme of development and an intent of the parties to the covenant that the restrictive scheme inure to the benefit of all owners of property in the addition. *Bein v. McPhaul*, 357 S.W.2d 420 (Tex.Civ. App.—Amarillo 1962, no writ). The Scotts do not dispute that the restrictive covenant here is part of a general development scheme. It is their contention, however, that in the absence of an assignment etc., the terms of the covenant give the developer, Flower Mound Farms, Inc., the exclusive right of enforcement.

The Scotts cite *Monk v. Danna*, 110 S.W.2d 84 (Tex.Civ.App.—Dallas 1937, writ dism'd) as the closest reported case. In *Monk* the appellants were temporarily restrained from violating a certain restrictive provision in their deed. It read in part:

"5. It is further covenanted and agreed that upon the breach of any of the foregoing conditions and covenants within

twenty-five (25) years from June 1, 1924, that the title to the said premises shall ipso facto and immediately revert to and vest in said Seller, or his successors or assigns, or in any person or corporation to which he shall grant said reversion, and he or his successors or assigns shall be entitled to immediate possession thereof, but such reversion shall not affect any mortgage or other lien which may in good faith then be existing upon said premises or on any improvements thereon."

In response to appellants' argument that no binding restrictive covenant existed in favor of the appellees because no written evidence existed that the covenants inured to their benefit, the court stated:

"As before mentioned, there is nothing in the deed executed by the common grantor, or in the recorded plat or dedication executed by him, showing that the restrictive covenants in the deed were intended for the benefit of other grantees, or that gave to either the right to complain of their violation. Under an express provision in the deeds, the grantor (Stevenson) alone (or his successor or assign) was entitled to take advantage of a breach of the covenants. Standing alone, and aside from matters extrinsic written instruments, the presumption should be indulged that the restrictions were inserted in the deeds for the benefit alone of the grantor.... (Citation omitted.) An easement or servitude, being an interest in land, cannot be created other than by an instrument in writing.... (Citations omitted.) However, as contended by appellees, the doctrine has so often been announced in this state and by courts the country over, as not to admit of further debate, that, *where the owner of a tract of land subdivides it and sells distinct parcels thereof to separate grantees, imposing restrictions upon its use pursuant to a general plan of development or improvement, such restrictions may be enforced by any grantee against any other grantee, either upon the theory that there is a mutuality of covenant and consideration, or upon the ground that mutual negative equitable easements are cre-*

*ated.* Where parcels are sold with reference to such a uniform plan to persons having notice thereof, the grantees may enforce the restrictions within this rule, irrespective of the order of the several conveyances, and irrespective of whether the covenants run with the land ...." (Citations omitted.) *Monk v. Danna, supra,* at 86. (Emphasis ours.)

Although the appellate court in *Monk* reversed the trial court and rendered a decision dissolving the temporary injunction for the reason that the trial court abused its discretion in granting the temporary writ, it overruled the appellants' point as to "standing".

The posture of this case being in the nature of temporary injunction the equities appear to be on the side of holding, pending a trial on the merits, that the Plaintiffs have standing to enforce the protective covenant. The fact that the entity to which the right of enforcement was ostensibly reserved is now defunct, in conjunction with the fact that such entity has now sold all the lots and, in doing so, relied upon the existence of the covenant as a selling point lends strongly to an equitable right of enforcement being vested in the grantees—at least as far as a temporary injunction is concerned.

■ Upon a trial on the merits the burden will be on the Plaintiffs to show that the covenant was intended to inure to their benefit and that the Scotts had notice of such intent when they purchased their lot. *Monk v. Danna, supra; Hooper v. Lottman,* 171 S.W. 270 (Tex.Civ.App.—El Paso 1914, no writ). It is well settled that the intention of the parties imposing a covenant is to be ascertained from the language of the covenant itself construed in connection with the surrounding circumstances. *Bein v. McPhaul, supra; Hooper v. Lottman, supra.* It is conceded by the Scotts that they had actual notice of the restrictions. Their position is, however, that they also had notice that Flower Mound Farms, Inc., the entity ostensibly possessing the exclusive enforcement right, was defunct.

Pending a full trial on the merits as to standing we deem it sufficient that the Scotts had notice of the restrictions.

 The Scotts' third point of error asserts that the restrictive covenant has been abandoned. In support of this contention the Scotts argue that there was abandonment shown by the fact that the property owners did not seek authorization from the developer to continue to enforce the covenant before the developer became defunct. They also assert that Plaintiff-Watts indicated abandonment by his "suggestion" that the Scotts consider putting their mobile home on a lot belonging to a relative which was also located in Flower Mound Farms Addition.

The fact remains, however, that no house trailers are now located within the Addition nor is there any evidence that any house trailers have ever been located within the Addition. "To prove abandonment of a general scheme or plan, it must be shown that the violation is so extensive and material as reasonably to lead to the conclusion that the plan had in fact been abandoned in the restricted area." *Witmer v. McCarty*, 566 S.W.2d 102, 104 (Tex.Civ.App.—Beaumont 1978, no writ); *Watson v. Wiseheart*, 258 S.W.2d 350, 353 (Tex.Civ.App.—Galveston 1953, writ ref'd n. r. e.). We hold that there is insufficient evidence to establish abandonment and we therefore overrule the Scotts' third point of error.

The Scotts' fourth point of error asserts that the trial court erred in issuing the injunction because, in doing so, it impermissible changed the status quo of the parties. The gist of the Scotts' argument on this point is that the Plaintiffs have failed to show that extreme hardship and irreparable injury will be suffered if a temporary injunction is not granted.

 The status quo to be preserved by a temporary injunction is the last, actual, peaceable, noncontested status that preceded the pending controversy. We hold the status quo in this case to be the absence of a trailer house in the Flower Mound Farms Addition.

In addressing the argument raised as to there being no showing of irreparable injury or extreme hardship we find the law in Texas to be well stated in *Protestant Episcopal Church Council of the Diocese of Texas v. McKinney*, 339 S.W.2d 400, 403 (Tex.Civ.App.—Eastland 1960, writ ref'd):

> "The general rule is that to entitle a petitioner to injunctive relief there must be established an actual and substantial injury or an affirmative prospect thereof . . . . (Citations omitted.) However, an exception to the above stated general rule is found in cases holding that a covenant restricting the use of land may be enforced by injunction where a distinct or substantial breach is shown without regard to the amount of damages caused by the breach, and that in such cases it is not necessary to show the existence of any particular amount of damages or to show that the injury will be irreparable."

We hold the presence of the trailer house to be a distinct violation of Paragraph "E" of the restrictive covenant appertaining to Flower Mound Farm Addition. We overrule the Scotts' fourth point of error.

The judgment of the trial court granting a temporary injunction is affirmed.