

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
| ANGEL RODRIGUEZ, | | No. 08-24-00086-CV |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | 109th District Court |
| | § | |
| JACK KEVIN ARNOLD, JAYME ARNOLD, | | of Winkler County, Texas |
| DAEGAN ARNOLD, JESSICA ARNOLD, | § | |
| ROBERT RICHARDSON & MENET | | (TC# DC18-17469) |
| RICHARDSON, | § | |
| | § | |
| Appellees. | § | |

**MEMORANDUM OPINION**

Appellant Angel Rodriguez appeals the trial court's summary judgment order enforcing restrictive covenants on his land. He argues that Appellees—Jack Kevin Arnold, Jayme Arnold, Daegan Arnold, Jessica Arnold, Robert Richardson & Menet Richardson (the Arnolds)—do not have standing to enforce restrictions referred to in his chain of title. We reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

All the property involved in this case—both Rodriguez's and the Arnolds's—is in the northeast quarter of section 27, block B-3 of Winkler County.

### A. Rodriguez's property

In 1982, the Estate of Minnie J. Cross deeded four acres to Gregory Guy Alexander and Mary Ellen Pope Alexander. That deed included an agreement that the Alexanders and "their heirs, assigns, executors, and administrators" use the land for residential purposes only, and that the property is subject to the restrictive covenants of the Windsor Heights Subdivision. The Windsor Heights covenants were filed in 1959 and apply to a subdivision of 21.45 acres in section 27, Block B-3 of Winkler County. As relevant to this suit, the covenants prohibit the following:

> No residence shall be placed except upon a homogeneous concrete foundation, have exterior walls finished upon the outside with brick, rock, first-grade lumber or the equal thereof. And all exterior wood surfaces shall be coated with not less than two coats of paint. All residences shall be of frame, tile, masonry, construction or the equal thereof.

> .     .     .

> No noxious or offensive activity shall be carried on upon any lot, or lots, nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood.

> No trade, commercial or professional pursuit of any character shall be carried on upon any lot in this subdivision.

> No structures of temporary character, trailer, basement, tent, shack, garage, barn, or other out building shall at any time be used as a residence, temporarily or permanently. . . .

In 2016, Alexander deeded the four acres to Rodriguez. The deed conveyed the property subject to "covenants and restrictions of record in the Office of the County Clerk of Winkler County."

2

### B. The Arnolds' property

According to an affidavit of Jack Kevin Arnold, the Arnolds own five tracts of property that, like Rodriguez's property, was previously owned by the Estate of Minne J. Cross and is subject to Windsor Heights Subdivision restrictive covenants.

### C. Suit to Enforce Restrictive Covenants

The Arnolds filed suit alleging that Rodriguez violated the restrictive covenants by operating an RV park and conducting his business (MDS Trucking LLC) on his property. They sought a declaratory judgment that the restrictive covenants are valid and enforceable and an injunction, damages, civil penalties, and attorney's fees.

The Arnolds filed a traditional motion for summary judgment, to which Rodriguez did not respond. The trial court granted the motion, permanently enjoined Rodriguez from all violations alleged by the Arnolds and ordered Rodriguez to pay $10,000 in statutory penalties and $13,711.55 in attorneys fees.

Rodriguez appealed, raising one issue: whether the Arnolds had standing to enforce the restrictive covenant.

## II. JURISDICTION

Although not raised by the parties, we first examine the jurisdictional question of whether the notice of appeal was timely filed.[1] *Freedom Commn'cs, Inc. v. Coronado*, 372 S.W.3d 621, 624 (Tex. 2012) ("[W]e must consider our jurisdiction, even if that consideration is sua sponte."); *Mitschke v. Borromeo*, 645 S.W.3d 251, 260–61 (Tex. 2022) ("[T]he absence of a timely notice of appeal prevents the appellate court from ever exercising jurisdiction in the first place.").

---

[1] We requested that the parties file supplemental briefing on this issue. Rodriguez submitted a brief, but the Arnolds have not.

The trial court granted summary judgment on December 20, 2023, and Rodriguez timely filed a motion for new trial. While that motion was pending, the trial court signed an amended order, "effective" January 19, 2024.[2] The motion for new trial was overruled by operation of law and Rodriguez filed his notice of appeal on April 10, 2024. If the appellate deadlines ran from the December 20 order, Rodriguez was required to file his notice of appeal by March 19, 2024. Tex. R. App. P. 26.1(a) (notice of appeal must be filed within 90 days if a party timely files a motion for new trial). But if the final order was the January 19 amended order, the notice of appeal deadline was April 18, 2024. *Id.* Therefore, the notice of appeal was timely only if appellate deadlines ran from the signing of the amended order, and not the original order.

A trial court has plenary power to "modify, correct, or reform [a] judgment within thirty days after the judgment is signed." Tex. R. Civ. P. 329b(d). "If a judgment is modified, corrected, or reformed *in any respect*, the time for appeal shall run from the time the modified, corrected, or reformed judgment is signed[.]" *Id*. at 329(b)(h) (emphasis added). The only exception to this rule is when "the face of the record reveals that the trial court entered the new order for the sole purpose of extending the appellate timetable." *Mackie v. McKenzie*, 890 S.W.2d 807, 808 (Tex. 1994).

The amended summary judgment order in this case is identical to the original except for a paragraph explaining that the amendment is "for the sole purpose of extending the plenary power of the Court to give time for settlement discussions between the Parties." The express purpose of amending the order was to allow the parties time to try to settle the case before expending the time and resources necessary for an appeal. While amending the order also had the *effect* of extending

---

[2] The amended order states that it was signed "effective the 19th day of January, 2024" but it was filed on March 1, 2024. Whether it was signed on January 19 or March 1 is inconsequential because Rodriguez's motion for new trial extended the trial court's plenary power to take any action until April 3, 2024.

4

appellate deadlines, there is nothing in the record showing that the trial court's *purpose* was anything other than allowing the parties an opportunity to discuss settlement when the trial court still had power to effectuate any agreement that was reached. *In re J.L.*, 163 S.W.3d 79, 83 (Tex. 2005) (holding that timetables were restarted when the changes to the judgment did not indicate that they were made to enlarge the time to appeal); *Abercia v. Kingvision Pay-Per-View, Ltd.*, 217 S.W.3d 688, 706 (Tex. App.—El Paso 2007, pet. denied) (amended order restarted deadlines when it was clear from the record that the trial court vacated the first order in order to modify damages and reconsider the surety and interest rate).

On this record, we cannot say that the sole purpose of amending the summary judgment order was to extend appellate deadlines. Therefore, those deadlines restarted upon the signing of the amended order, the notice of appeal was timely filed, and we have jurisdiction.

## III. STANDARD OF REVIEW AND APPLICABLE LAW

### A. Standard of review

A party may move for traditional summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c). When a plaintiff moves for summary judgment on its own claims, he must conclusively prove each element of his cause of action. *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex. 2000). The burden does not shift to the nonmovant to respond or produce evidence unless the movant meets her burden. *Draughon v. Johnson*, 631 S.W.3d 81, 87–88 (Tex. 2021).

We review summary judgments de novo. *Id.* In our review, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019). When the trial court does not specify in its order the ground on which it granted

5

summary judgment, we must affirm if the judgment is proper on any ground. *FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

**B. Standing to enforce restrictive covenants**

Rodriguez challenges only whether the Arnolds conclusively proved that they have standing to enforce the restrictive covenants. A restrictive covenant is contract between the seller and purchaser of real property. *Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 668 (Tex. App.—San Antonio 2008, no pet.); *Dealer Computer Services, Inc. v. DCT Hollister Rd, LLC*, 574 S.W.3d 610, 616 (Tex. App.—Houston [14th Dist.] 2019, no pet.). As with other types of contracts, the general rule is that a restrictive covenant is enforceable only by the parties to the contract or those in privity with them. *Dealer Computer Services*, 574 S.W.3d at 616–17; *Moseley v. Arnold*, 486 S.W.3d 656, 661–62 (Tex. App.—Texarkana 2016, no pet.); *Ski Masters*, 269 S.W.3d at 668.

The exception to this rule is when the property is part of a general scheme or plan. In that case, the restrictions are intended to benefit all owners in the development. As our Court recognized over 100 years ago,

> The most familiar cases in which courts of equity have upheld the right of owners of land to enforce covenants to which they were not parties are those in which it has appeared that a general building scheme or plan for the development of a tract of land has been adopted, designed to make it more attractive for residential purposes by reason of certain restrictions to be imposed on each of the separate lots sold. This forms an inducement to each purchaser to buy, and it may be assumed that he pays an enhanced price for the property purchased. The agreement therefore enters into and becomes a part of the consideration. The buyer submits to a burden upon his own land because of the fact that a like burden imposed on his neighbor's lot will be beneficial to both lots. The covenant or agreement between the original owner and each purchaser is therefore mutual. The equity in this particular class of action is dependent as much on the existence of the general scheme of improvement or development as on the covenant, and restrictions which contemplate a general building plan for the common benefit of purchasers of lots are recognized and

6

> enforced by courts of equity at the instance of the original grantor or subsequent purchasers.

*Hooper v. Lottman*, 171 S.W. 270, 272 (Tex. App.—El Paso 1914, no writ); *Curlee v. Walker*, 244 S.W. 497, 498 (Tex. 1922) (quoting *Hooper* at length and stating that it announced the "correct rules that govern covenants of the character set out in deeds"). In short, when restrictive covenants are used to create a general scheme or plan—such as a subdivision—any property owner in that development has standing to enforce the restrictions.

## IV. ANALYSIS

As summary judgment evidence, the Arnolds produced the deeds in Rodriguez's chain of title showing that the Estate of Minnie J. Cross previously owned the property, and that the property was subject to the Windsor Heights subdivision restrictive covenants. They did not produce the deeds showing the chain of title for their property. Instead, they submitted Jack Kevin Arnold's affidavit that avers that the Arnolds's property is also in the northeast quarter of section 27 of Winkler County, also previously owned by the Estate of Minnie J. Cross, and also subject to the Windsor Heights restrictive covenants.[3] The Arnolds argue that they have the right to enforce the restrictions for two reasons: (1) there is privity of estate and (2) Rodriguez's property and "at least one or more of the Appellee's tracts are part of a general plan or scheme of development."

---

[3] After the trial court granted summary judgment, the Arnolds filed a response to Rodriguez's motion for new trial that attached the deeds in their chain of title. In their appellate brief, they point to these deeds as summary judgment evidence. But, in reviewing a summary judgment, we consider only the evidence that was before the trial court at the time of its ruling unless the record affirmatively shows that the trial court permitted and considered the late-filed evidence. *Alicea v. Curie Bldg., L.L.C.*, 632 S.W.3d 142, 151 (Tex. App.—El Paso 2021, no pet.). Since those deeds were not before the trial court at the time of its ruling, they are not evidence that we can consider. However, we note that even if we did consider these deeds, we would still conclude that the Arnolds did not conclusively prove that they have standing to enforce the restrictive covenant.

### A. Privity of estate

The Arnolds argue that privity of estate exists because their property and Rodriguez's have the same common source—the Estate of Minnie Cross. "But privity of estate requires more than a showing of a common source of title." *Wasson Interests, Ltd. v. Adams*, 405 S.W.3d 971, 974 (Tex. App.—Tyler 2013, no pet.). Privity of estate occurs when different parties have a "mutual or successive relationship to the same rights of property." *Stokwitz v. Tinajero*, No. 04-19-00773-CV, 2020 WL 7364656, at *2 (Tex. App.—San Antonio Dec. 16, 2020, no pet.) (citing *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 910–11 (Tex. 1982)). This has been interpreted to mean interests *in the same land*. *Id.*; *Wayne Harwell Props., v. Pan Am. Logistics Ctr., Inc.*, 945 S.W.2d 216, 218 (Tex. App.—San Antonio 1997, writ denied); *Moseley*, 486 S.W.3d at 661n. 6. Although the Cross Estate at one time owned all the property involved in this suit, there is no privity of estate because the Arnolds and Rodriguez were granted different land. The Arnolds therefore do not have the right by virtue of privity of estate to enforce covenants affecting Rodriguez's land.

### B. General scheme or plan

The Arnolds contend that their property and Rodriguez's is part of a general scheme or plan because all the deeds adopted the restrictive covenants of the Windsor Heights Subdivision. But such evidence is not enough; the Arnolds were also required to show that the property *is located in* the Windsor Heights subdivision.

The Windsor Heights restrictive covenants explain that the subdivision is comprised of 21.45 acres of land in section 27, block B-3 of Winkler County and that the covenants are "[f]or the consideration of the mutual benefits of all owners and purchasers of any lots" in that subdivision. The Windsor Heights restrictions therefore apply only to lots in the subdivision. In

8

*Wren Mortg. Co. v. Timber Lakes and Timber Ridge Ass'n, Inc.*, the Beaumont court of appeals considered whether restrictive covenants of a subdivision could restrict the use property outside of the subdivision. *Wren Mortg. Co., Inc. v. Timber Lakes & Timber Ridge Ass'n, Inc.*, 612 S.W.2d 618 (Tex. App.—Beaumont 1980, writ ref'd n.r.e.). In that case, a deed subjected the plaintiff's property to restrictions for Timber Lakes subdivision, but the plaintiff's property was not actually in that subdivision. *Id.* at 620. The court of appeals held that, despite the deed's recitation of the restrictions, the property was not part of the general plan for the subdivision and so was not burdened by the restrictions. *Id.* at 621–22. Similarly, here, Rodriguez's property is burdened by the Windsor Heights restrictive covenants only if it is in that subdivision. Moreover, the Arnolds have standing to enforce the Windsor Heights covenants only if their property is also in that subdivision. *Country Cmty. Timberlake Vill., L.P. v. HMW Special Util. Dist. of Harris*, 438 S.W.3d 661, 668 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) ("it is well settled that a restriction on a piece of property may not be enforced by one who owns land not subject to the restriction, absent privity of contract or a general plan or scheme of development applicable to the land that the plaintiff does own"); *Dealer Computer Service*, 574 S.W.3d at 618 ("The 'general plan or scheme' doctrine does not authorize owners of lots in previously or subsequently platted subdivisions to enforce the covenants of property in other subdivisions.").

The Arnolds submitted no evidence, and did not even allege, that Rodriguez's and their property was part of the Windsor Heights subdivision. Although the Windsor Heights subdivision is in the same section (section 27) as the parties' property, the covenants do not state that it, like the parties' property, is in the northeast quarter of that section. And even if it is, there is no evidence in the record that Rodriguez's and the Arnold's property is in the 21.45 acres that comprise the Windsor Heights subdivision instead of elsewhere in the 160 acres that make up the whole of the

9

northeast quarter of section 27. *Quarter Section*, BLACK'S LAW DICTIONARY (12th ed. 2024) (A piece of land containing 160 acres. . . .). The Arnolds failed to conclusively prove that the properties are part of the general scheme or plan of the Windsor Heights subdivision.

Nor is there conclusive evidence that the Estate of Minnie J. Cross instituted its own general plan or scheme separate from Windsor Heights. Whether a general plan or scheme exists for the development of property is a question of fact. *Ski Masters of Tex., LLC*, 269 S.W.3d at 672; *Baywood Estates Prop. Owners Ass'n, Inc. v. Caolo*, 392 S.W.3d 776, 783 (Tex. App.—Tyler 2012, no pet.). It can be shown in various ways:

> (1) express covenant; (2) by implication from the filed map; (3) parol representations made in sales brochures, maps, advertising, and oral statements on which a purchaser relied in making his purchase; (4) reciprocal covenants in all deeds out of the common developer; or (5) the developer pursuing a course of conduct indicating a neighborhood scheme.

*Baywood*, 392 S.W.3d at 783 (citing *Lehmann v. Wallace*, 510 S.W.2d 675, 680 (Tex. Civ. App.— San Antonio 1974, writ ref'd n.r.e.).

The Arnolds did not produce any evidence that the Estate of Minnie Cross platted a development or made representations to the purchasers that they would be part of a restricted development. The *only* evidence the Arnolds produced is that deeds subjected their property and the Rodriguez's property to the same restrictions. This is not enough. "The fact that these deeds contained identical restrictions [is not] sufficient of itself to establish the existence of a general scheme, or that the restrictions in the deed under which appellant claims were intended for the benefit of any other lot." *Pierson v. Canfield*, 272 S.W. 231, 233–34 (Tex. App.—Dallas 1925, no writ); *see also Cambridge Shores Homeowners Ass'n v. Spring Valley Lodge Co.*, 422 S.W.2d 10, 13 (Tex. App.—Dallas 1967, no writ) ("But the mere fact that the deeds executed by Texoma Lakeside Village, Inc. contained identical restrictions is not sufficient of itself alone to establish

the existence of a general scheme."); *Harbor Ventures, Inc. v. Dalton*, No. 03-10-00690-CV, 2012 WL 1810205, at *5 (Tex. App.—Austin May 18, 2012, pet. denied) (mem. op.) (same).

The Arnolds failed to put forward conclusive summary judgment evidence that their and the Rodriguez's property were part of a general plan or scheme. Because they did not meet their burden as movants for traditional summary judgment, Rodriguez had no burden to respond or produce evidence. We sustain Rodriguez's sole issue.

## V. CONCLUSION

The Arnolds failed to meet their summary judgment burden and produce conclusive evidence that they have standing to enforce restrictions on Rodriguez's land. The judgment of the trial court is reversed, and the case is remanded for further proceedings.


MARIA SALAS MENDOZA, Chief Justice

July 15, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.